FIRST NATIONAL BANK OF OMAHA, APPELLEE, V. EMMA GOODMAN, APPELLANT.*

FILED DECEMBER 22, 1898.    NO. 8636.

1. **Liability of Surety.** A surety is entitled to stand upon the strict terms of his contract. He is bound only to the extent and in the manner pointed out in his obligation.

2. ———: ALTERATION OF CONTRACT. If the contract of a surety be altered without his consent, it ceases to be his contract, and he is no longer bound to its performance.

3. ———: CONSTRUCTION OF CONTRACT. But in ascertaining the extent to which a surety has become obligated, unreasonable and overstrained constructions are not to be resorted to. The contract of suretyship, like every other agreement, is to be given a fair

*Rehearing allowed January 5, 1899.

and reasonable interpretation in accordance with established rules, with a view of determining upon what proposition the minds of the contracting parties have met in the same intention.

4. **Pledge by Wife to Secure Husband's Debt:** FURTHER ADVANCES: EXTENSION OF TIME FOR PAYMENT. A pledge of property by a wife to secure an indebtedness of her husband, and to prevent his creditor from enforcing immediate payment, will not, of itself, entitle the creditor to hold such property as security for further advances to the husband. Neither will it entitle the creditor to hold the property for the satisfaction of the original indebtedness after having made a valid contract extending the time for its payment.

5. ———: ———: ———. Such an extension made by a creditor without the knowledge or consent of the wife will operate to release the pledge.

REHEARING of preceding case (55 Neb. 409. *Former decision overruled and judgment below reversed.*

*Isaac Adams* and *George W. Doane,* for appellant.

*J. M. Woolworth* and *Congdon & Parish, contra.*

SULLIVAN, J.

At the January term an opinion was filed affirming the judgment of the district court in favor of the First National Bank of Omaha. (*First Nat. Bank of Omaha v. Goodman,* 55 Neb. 409.) On the motion of counsel for Mrs. Goodman a rehearing was granted and the cause having been orally argued at the present term was again submitted. After a thorough consideration of the questions involved we feel constrained to recede from our former position, and to confess that we erred in the conclusion heretofore announced. We are now convinced that in dealing with the evidence from which that conclusion was deduced we indulged a latitude and freedom of interpretation not warranted by the law of suretyship. The facts are stated with substantial accuracy in the first opinion and will not be here reproduced in detail.

The inference to be derived from the conceded facts is the main question before us for decision. That a surety is entitled to stand upon the strict terms of his contract

is a proposition of law upon which the authorities are all agreed. To the extent, and in the manner, pointed out in his obligation he is bound, but no farther. It has been often said by judges and text-writers that sureties are favorites of the law, and that their liability will not be extended by implication. If the contract of a surety be altered without his consent, it ceases to be his contract and he is no longer bound to its performance. If he can say, as was remarked in *McWilliams v. Mason*, 31 N. Y. 294, " 'This is not the precise contract I made,' the law attaches to him no liability." The reports abound with cases in which this principle has been illustrated and applied. But it is also true that the rule which requires that a surety shall not be bound beyond the terms of his engagement does not call for, nor authorize, a forced and unreasonable construction of the contract with a view of relieving the surety from an obligation which he has assumed. Far-fetched and over-strained constructions are not to be resorted to. The contract of a surety, like every other agreement, must be given a fair and reasonable interpretation in accordance with established rules, with a view of determining upon what proposition the minds of the parties met in the same intention. The intention, when ascertained from the evidence before the court, must in every case prevail. These principles are elementary. Tested by them it seems entirely clear that Mrs. Goodman did not pledge the policies in controversy for anything more than the indebtedness of her husband existing, and evidenced by the notes in the possession of the bank at the time the assignments were made. The bank came into court asserting a lien on the policies by virtue of a contract with Mrs. Goodman. To succeed in the action it was required to establish the contract on which it relied, by a preponderance of the evidence. It was required to show that the pledge covered the indebtedness evidenced by the obligations upon which the money collected from the insurance companies was applied. When it appeared on the trial that the

original notes were renewed, and the time for payment extended, the release of the pledge was established, unless there was evidence affording an inference that the pledgor intended, at the time of the bailment, that the policies should stand as a continuing security or general cover. It is contended by counsel for the bank that such an inference may be fairly drawn from the circumstances surrounding the assignment of the policies. To ascertain the intention of Mrs. Goodman we must look to the facts of which she was cognizant when the pledge was made. She was not a woman experienced in the methods or details of commercial transactions. She concerned herself, as was said in the former opinion, "with her domestic duties, and neither knew nor cared to know much of Mr. Goodman's business affairs." She was aware, of course, that her husband was in financial straits; that he was indebted to the bank and being subjected to some pressure for payment or security. She knew also that he was endeavoring to obtain a loan on his real estate with which to discharge his indebtedness to the bank. She hoped, and probably expected, that his efforts in this direction would be successful. She was assured that the pledge would stand but for a short time. She doubtless contemplated the failure of the pending negotiations for a real estate loan as a possible, or even a probable, event, and understood the risk she was assuming. She consented to part with the policies so that the bank would not enforce immediate payment of the indebtedness owing to it by Goodman. Her intention was to help her husband extricate himself from the financial difficulties in which he was involved. Had she been requested to do so, she might have agreed that the pledge should stand as security for all subsequent renewals and unlimited future advances. But the question for solution is not what she might have done, but what she, in fact, did. Her liability is to be measured and bounded by her specific intention. The evidence shows only that she consented to secure "Mr. Goodman's indebtedness to the

bank." That phrase, by legal implication, meant the indebtedness in the form in which it then existed—the contracts by which it was evidenced. Although Mrs. Goodman was ignorant of the form of the indebtedness, she became bound for the payment of the specific notes according to their terms. As she would not be permitted to say that her undertaking did not go that far, neither can the bank, without further proof, be heard to say that it went farther. The legal effect of the pledge was to secure Goodman's notes then in the possession of the bank. To hold that renewals and future advances were also secured, is to ascribe to Mrs. Goodman a definite mental attitude in relation to a matter of which she had never thought. There is nothing to show that she knew when the indebtedness to the bank would mature, or that the bank's custom was to make short loans and insist on frequent renewals. The truth is that there is no evidence whatever that the subject of renewals or future advances engaged her attention at any time either specifically or in a general way; and she is not bound for such renewals or advances because they were not made with her authority or consent.

Circumstances occurring after the pledge was made are relied on as tending to support the theory of the bank, but we think they are without evidential force. Mrs. Goodman proceeded to assert her claim to the proceeds of the policies with reasonable diligence after she was informed of the facts which operated to release the pledge.

Another ground upon which it is sought to justify the judgment of the trial court is that Mrs. Goodman, by her acts and conduct, is estopped from showing what her real intention was at the time the policies were assigned to the bank. We think the facts proven are manifestly insufficient to constitute an estoppel *in pais*. The bank did not deal with Goodman as the agent of his wife clothed with an ostensible general authority to dispose of her policies for his own purposes. Had it done so its

present contention would be entirely sustained by the precedents cited and many others to which reference might be made. The doctrine is impregnably established, by a long and uniform course of decisions, that one may, in dealing with another assuming to act in the capacity and character of an agent, implicitly rely on the apparent authority with which he has been, either intentionally or carelessly, invested by the putative principal. The rule is that "when one of two innocent parties must suffer, the law imposes the loss upon him who, by misplaced confidence, has enabled another on the faith of his obligation to obtain the money or property of the third person who, relying on such obligation, has dealt in good faith." In such case it is, in the language of the opinion of Denio, J., in *McWilliams v. Mason, supra,* "more consonant with public policy as well as sound morals that he who, by permitting himself to be deceived, has put it in the power of another to defraud an innocent third party, should himself suffer rather than the latter." This is a sound principle, but we are unable to see its relevancy. The evidence does not bring the transaction in question within its sphere of influence. Up to the time the bank obtained possession of the policies it dealt with Goodman on the assumption that he was the owner and authorized to dispose of them as he might think proper. When it was discovered that they were the property of Mrs. Goodman, the bank did not return them, but retained possession and caused forms of assignment to be prepared under its supervision. It then presented these assignments to Mrs. Goodman for her signature. She signed them and returned them to the agent of the bank; and by that act they were for the first time lawfully delivered and became effective as a pledge. The bank was not deceived by any false evidence of authority exhibited to it by Goodman. It did not deal with the agent, but with the principal herself. It determined the form in which the agreement between it and Mrs. Goodman should be expressed. It neither

fixed her liability in the written instrument nor informed her as to its understanding in regard to the matter. A pledge by a surety to secure unlimited renewals and unlimited future advances was not a usual and ordinary one. It was unusual and extraordinary; and it was, under the circumstances, the obvious duty of the bank to either express it in the assignments or, in some other manner, bring it to Mrs. Goodman's attention. Having failed to do so it assumed the risk that there might not be mutuality of purpose in the transaction. It was not warranted in assuming that she was advised of the precise terms of its arrangement with Goodman. The woman may have been negligent, but her negligence was certainly not greater than that of the bank.

The judgment of the district court is reversed and a judgment rendered in this court in favor of the appellant for the sum of $35,753.72, that being the difference between the net proceeds of the policies and one of the notes for which they were pledged and which was not renewed, together with the interest on such difference at seven per cent from August 31, 1895.

A case much like the one at bar and strongly tending to sustain the conclusion here reached is *Allis v. Ware*, 28 Minn. 166, 9 N. W. Rep. 666.

REVERSED AND DECREE FOR APPELLANT.

IRVINE, C., adheres to the former opinion.