FIRST NATIONAL BANK OF OMAHA, APPELLEE, V. EMMA GOODMAN, APPELLANT.

FILED JUNE 21, 1899.   No. 8636.

Life Insurance: WIFE'S PLEDGE OF POLICIES: RELEASE. Policies of insurance on the life of her husband were pledged by the beneficiary, the wife, as security for the payment of the debt of the husband: The evidence *held* sufficient to support a finding that the contract of pledge was inclusive of extensions of times of payments, and that such extensions were made did not discharge or release the pledge.

REHEARING of case reported in 55 Neb. 418.  *Judgment below reversed in part.*

*Isaac Adams* and *George W. Doane,* for appellant.

*J. M. Woolworth* and *Congdon & Parish, contra.*

HARRISON, C. J.

Certain policies of insurance on the life of Charles F. Goodman, during the main transactions which are involved in this suit were by the beneficiary of each policy, his wife, Emma Goodman, on March 8, 1893, pledged with the First National Bank of Omaha as security for the payment of the indebtedness of her husband to the bank.  Subsequent to the death of the husband, which occurred January 11, 1895, the bank collected the amounts due on the policies of insurance and applied the proceeds to the payment of what was then due it of Mr. Goodman's indebtedness.  In this action, in which the bank and Mrs. Goodman were parties, the right of the bank to apply the money derived

from the insurance policies as it had, was contested and resulted favorably to the bank, and on appeal to this court by the defendant party the judgment of the district court was affirmed. For opinion see *First Nat. Bank of Omaha v. Goodman*, 55 Neb. 409. A motion for a rehearing was granted, and on second submission and consideration of the cause the judgment of the trial court was reversed and judgment rendered in this court for the appellant. (See *First Nat. Bank of Omaha v. Goodman*, 55 Neb. 418.) A motion for a rehearing was filed for the bank, and for the appellant there was asked what was practically a rehearing or reconsideration of some at least of the matters involved. The second rehearing was granted, and the case has been again argued and submitted. For a full knowledge of the facts we refer the reader to the former opinions, especially the first, wherein the facts were stated in detail. A repetition or restatement of them herein we deem unnecessary.

The rules of law applicable to pledges for security for payments of debts and the reciprocal rights, duties, and liabilities of the respective parties are well established and defined. There was little or no appreciable conflict in the evidence. The main question is to ascertain what the evidence and the fair and allowable inferences therefrom disclose was the effect of the acts of assignment to the bank of the life insurance policies by Emma Goodman. That they were hers has been stated in the former opinions, and with such statement there can be no quarrel. That she is entitled, as is any surety, to a strict construction of her acts, and nothing is by implication to be added to their effect, is equally true. With all pertinent rules in view, we are to determine whether the evidence shows a contract of pledge in relation to specific debts then existent and not beyond the expressed or fixed maturity as stated, or shown in any evidence of the debts, or did it contemplate extensions of times of payments, and also future advances or debts created by loans made in the future. The last, we will say, was

clearly without the scope of the pledge, however effective or non-effective it may be determined as to other urged matters. The assignments of the policies, referring now to the writings,—the words were but general and indicate nothing save and except the mere transfers, —furnish no clues to any other or further purposes. This is, strictly speaking, not exactly true as to one. In the transfer of it there did appear a statement which would probably direct attention to the fact that the interest the bank would acquire would not be direct and independent, but contingent and dependent. The assignments were executed by Mrs. Goodman at the express solicitation of her husband, and only after expostulation and expressions of unwillingness during two occasions when the matters of such transfers were subjects of conversation did she finally go to his place of business for the purpose and there and then gave proof of yielding assent thereto by actual performance of the acts. It will be borne in mind that the date of the transfers of the policies was March 8, 1893. Mr. Goodman's indebtedness to the bank then was evidenced as follows: One note of date December 19, 1892, in the sum of $10,-000, and due March 22, 1893, or fourteen days subsequent to the date of the assignments of the policies and their delivery in pledge. A note of date January 18, 1893, amount $10,000, due April 21, 1893, or forty-four days subsequent to the pledge of the policies. One note dated February 8, 1893, for $1,000, due May 12, 1893, or sixty-six days after the date of the pledge. One note dated February 20, 1893, for $9,000, due May 24, 1893, or seventy-seven days after the date of the pledge. One note dated February 20, 1893, for $10,000, due May 24, 1893, or seventy-seven days after the date of the pledge. One note dated February 23, 1893, for $2,000, due May 27, 1893, or eighty days after the date of the pledge. And one note dated March 1, 1893, for $2,000, due June 2, 1893, or eighty-six days after the date of the pledge.

It is true that Mrs. Goodman did not know, or the evi-

dence is silent on the subject, that the debt of her husband to the bank was divided as above indicated, or that any or all of it would become due in a few days or a very short time from the date of the pledge. To the extent disclosed by the evidence she knew very little, if anything, of the details of the business of her husband with the bank, or indeed any other of his business affairs. It is also true that the pledge was made, or rather obtained to be made, by Mr. Goodman because of his prior promises to the bank or to Mr. Kountz that it should be; but it is just as plain that what was desired by Mr. Goodman was further time within which to pay or attempt to meet his indebtedness to the bank; that it was an idle and futile act to pledge the policies to the extent Mr. Goodman's plans were to be advanced or furthered by it unless it was inclusive of extensions of time for payments as the notes matured, and the pledge was wholly. ineffectual except to place the policies within the power and possession of the bank, and enable it, as soon as the debts matured, to realize from the pledge in any appropriate manner. Mrs. Goodman did, however, know something generally of her husband's business matters and transactions, and that he was financially embarrassed and owed the bank, that the bank required the pledge to be made, and that her husband desired it; that it was to be done, if done at all, to "keep Mr. Kountz quiet." This was the expression, she states, used by her husband to convey the necessity or reason for the pledge, and could have but one meaning, could be understood but in one sense, that it was to get more time to pay the bank the debt to it. She testified that she understood the purpose of the transfer and delivery of the policies to the bank, and that it was to be security for her husband's indebtedness. As Judge Sullivan expresses it in the second opinion in the case (55 Neb. 418), "Her intention was to help her husband extricate himself from the financial difficulties in which he was involved." There are other facts of the after conduct of Mrs. Goodman

which, we think, while none of them were of sufficient strength in and of themselves to bind her, yet are evidentially of much weight as tending strongly to show what she must have understood and believed the pledge to have been. This seems the only reasonable view that can be taken of some of these after actions on her part. After a careful review of the evidence and the arguments we are forced again to the conclusion expressed by Judge IRVINE in the first opinion filed (55 Neb. 409): "Her reluctance was to part with the policies at all. Having consented to part with them, she did so according to her husband's wishes, to fulfill his promises and to accomplish his purposes. His purpose was to obtain further extensions. Her mind and her acts must be read in this light. When she yielded to his importunities it was evidently by making his undertakings her own. * * * The more reasonable, the more obvious, the more probably true construction of this contract accords with the finding of the trial court. In a civil case we are not at liberty to reject the more reasonable, the more obvious, the more probably true view of the evidence, and accept the less reasonable and the less probable, because of any technical rule of proof by which the latter is fortified. Nor may we reject the more reasonable and the more probable from sentiment of sympathy which, if it could have sway, would here exert a strong influence in favor of the appellant." As we have hereinbefore stated, we do not think there is any evidence to sustain a finding that the pledge was to cover new loans or new debts of any future creation, but was for indebtedness existent at the time of the pledge, and time, by forbearance or extension, for its payment. It follows that the second opinion filed is disapproved and the judgment of the district court is reaffirmed to the extent it was for the bank relative to indebtedness in existence at the time of the pledge, and reversed as to the debts of subsequent creation.

JUDGMENT ACCORDINGLY.

SULLIVAN, J., dissenting.

I adhere to the views expressed in the second opinion.

NORVAL, J., concurring.

At the consultation had after the last oral argument in this cause I was of the opinion that the judgment of the district court should be affirmed to the extent it held that the policies were bound for the payment of the indebtedness in existence when they were pledged to the bank, and after a careful reading of the entire evidence, and a consideration of the same and of the several written and oral arguments of counsel for the respective parties, no reason is presented for the abandonment of the conclusion then reached. The writer does not say that the evidence would not justify a finding in favor of Mrs. Goodman, but he is convinced it was sufficient to sustain the conclusion of the district court to the extent already indicated, but does not support the judgment below as to the indebtedness of Mr. Goodman to the bank created subsequent to the pledging of the policies in question.