### EDWARD H. SWEET *vs.* JAMES F. KIMBALL.

Suffolk.    March 30, 1896. — June 11, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Fraud — Action — Duress — Evidence — Damages.*

The use by a creditor of promises of assistance to his debtor in his affairs as a device to lure him from another State into this Commonwealth, with intent to cause his arrest and compel him to pay for his release, is a sufficient fraud upon which to found an action.

Money paid to be free from a wrongful arrest may be recovered.

In an action for fraudulently inducing the plaintiff to come from another State into this Commonwealth, arresting him and compelling him to pay for his release, if the defendant has been allowed to testify that he had no intent to lure the plaintiff here at the time when he made the promises which induced

the plaintiff to come, evidence bearing on the defendant's intent at a later time is immaterial.

Where a person was induced fraudulently to come from another State into this Commonwealth by a creditor, who caused his arrest and compelled him to pay a sum of money for his release, the former, in an action against the latter, was permitted to recover, in addition to that sum, a further sum paid by him to settle another suit, in view of the circumstances of the case.

TORT, in two counts. The first count alleged that the plaintiff resided and did business in Providence, in the State of Rhode Island; that in January, 1890, he was indebted to divers parties, among whom was the firm of Stimpson, Murray, and Company, composed of the defendant and one Charles N. Howe, and doing business in Boston, in various sums of money, which he was unable to pay in full; that he surrendered all his property by an assignment, as provided by the laws of Rhode Island, for the benefit of his creditors; that at a meeting of his creditors called pursuant to the assignment and at which the defendant was present, the defendant said he would take any offer of compromise the plaintiff's Rhode Island creditors would accept, and a committee of the plaintiff's creditors in Providence was appointed to make a full examination of his affairs and report their recommendation; that thereafter the defendant, "for the purpose of extorting a pecuniary advantage from the plaintiff," and desiring to get the plaintiff within the jurisdiction of the Superior Court, "and intending to arrest, imprison, harass, and extort money from him," fraudulently represented to him that if he would come to Boston the defendant would accept for his firm such offer as the committee of the creditors should recommend, and would assist the plaintiff in securing the acceptance of the offer by his other Boston creditors, and requested the plaintiff to come to his store for that purpose; that the committee so appointed, after an examination of the plaintiff's affairs, recommended that he raise and pay, and that the creditors accept in full of their claims, twenty cents on each dollar thereof; that the plaintiff, relying on the defendant's promises and believing him to be acting in good faith, and not knowing the fraudulent purpose, on February 7, 1890, came to Boston and went directly to the defendant's place of business to secure the necessary signature of assent to the acceptance of the composition agreed upon by his Providence creditors; that

the defendant fraudulently induced him to remain at his store under the false statement that he was going to see some other creditors of the plaintiff and assist in getting their assent to the settlement, which he neither did nor intended to do, and thus detained the plaintiff and caused a writ to be issued out of the Superior Court against him, wherein his firm was plaintiff, alleging that he was commorant of Boston, and an affidavit to be thereto attached stating that he was about to leave the State, and a certificate to be made authorizing the plaintiff's arrest; and that thereupon the defendant caused the plaintiff to be arrested and detained a long time, and forced him by such detention and by threats of imprisonment to pay the sum of $700 to obtain his release.

The second count alleged that the defendant caused the plaintiff to be arrested and restrained of his liberty for a long time, without any right or authority, and forced the plaintiff to pay the sum of $700 to obtain his release. The defendant demurred to the first count. In the Superior Court, the demurrer was overruled; and the defendant appealed to this court.

At the trial, the jury returned a verdict for the plaintiff. After the trial the judge allowed the plaintiff, against the defendant's objection, to amend his declaration by adding a third count for malicious abuse of process; and, at the defendant's request, reported the case to this court. If there was no error in refusing the rulings requested, judgment was to be entered on the verdict; otherwise, the verdict was to be set aside and a new trial granted. The questions raised by the report appear in the opinion.

*F. Hutchinson & W. H. Preble,* for the plaintiff.

*S. L. Whipple,* for the defendant.

HOLMES, J. There is no doubt that it is actionable to induce a man to come into this State by fraudulent representations, with intent to arrest him after he gets here. *Cook* v. *Brown,* 125 Mass. 503. *Wanzer* v. *Bright,* 52 Ill. 35. But the defendant in support of his demurrer says that when it is alleged that the defendant fraudulently represented that if the plaintiff would come to Boston the defendant would do certain things, the so called representation relating wholly to the future was a contract or nothing, and therefore could not be fraudulent.

But the allegation is elliptical. The fraud intended is not the failure of the representations to come true, or, in other words, the failure of the defendant to keep his promise. What is meant is, that the defendant's promises purported to be made for ordinary business reasons, or from good will to the plaintiff, whereas in fact they were made as a device to lure the plaintiff into the State. Probably it is meant, further, that there was a fraudulent misrepresentation of the defendant's intention to keep his promises. Whether there is more difficulty in the way of treating any misrepresentation of intent to perform a contract as a fraud and a tort than there is with regard to representations of intent in general, or intent to pay the price of goods in particular, it is unnecessary to consider, since we are of opinion that the use of the promises as a device, as above explained, is a sufficient fraud. *Commonwealth* v. *Rubin*, 165 Mass. 453. The demurrer properly was overruled. See further *Williams* v. *Reed*, 5 Dutch. 385, 387.

The second question argued is, that the court ought to have directed a verdict for the defendant on the second count. This alleges a wrongful arrest, and compelling the plaintiff to pay seven hundred dollars to obtain his release. Assuming that the former allegation alone would not justify a recovery where the process was lawfully issued by a court having jurisdiction, yet we think that the count may be regarded as a count to recover money paid under duress, and the former allegation as merely a specification of the nature of the duress. It is true that the present plaintiff could have got rid of the action in which he was arrested sooner or later by bringing the facts to the attention of the court, but that consideration is not enough to prevent the wrongful arrest of a stranger away from his friends, probably unable to give security and without counsel, from being a very grievous form of duress, and it requires no innovation to decide that money paid to be free from it may be recovered. *Clark* v. *Woods*, 2 Exch. 395, 406. *Grainger* v. *Hill*, 4 Bing. N. C. 212.

In the view which we have taken of the two counts on which the case was tried, the addition of the third count after the trial was unnecessary, and it also is unnecessary to consider whether, if the verdict could not be sustained on the pleadings on which

it was rendered, it could be saved by this amendment after the defendant's demurrer and requests for rulings.*

The defendant was allowed to testify that he never had an intention of arresting the plaintiff until he received a letter from a Rhode Island creditor on the day of the arrest. He testified that on the morning of that day he went to another creditor, and had a conversation with him about the plaintiff's affairs. A question as to what the defendant did after that, as a result of his conversation, was excluded. It is said that the evidence should have been admitted as bearing on the defendant's intent. The defendant's intent at that time was immaterial. That he had no intent to lure the plaintiff into the State at an earlier time, when he made his promises, he had sworn already.

It is argued that there was an error committed in allowing the defendant to be charged for the sums paid by the plaintiff to settle two other suits. We do not perceive how this question is open on the report. But if any part of the plaintiff's case was believed by the jury, it was not very difficult to infer that those who profited by the plaintiff's arrest did so through the contrivance of the defendant.

*Judgment on the verdict.*

---

* The rulings requested were as follows:

"1. Upon all the evidence in the case, the plaintiff cannot recover upon either count of the declaration. 2. There is no evidence of any false or fraudulent pretense used by the defendant to induce the plaintiff to come within the Commonwealth. 3. If the plaintiff can recover at all, he cannot recover for anything which occurred after his arrival in Boston, but can recover only for the loss of time, expenditure of money, and neglect of business in making the trip. 4. There is no evidence upon which the plaintiff can recover under the second count of the declaration. 5. By his settlement of the defendant's suit the plaintiff waived the illegality of his arrest (if it were illegal) and submitted himself to the jurisdiction of the court to which the writs were returnable. 6. There is no evidence of duress that would, for the purposes of this case, invalidate or avoid the settlement made by the parties to the original suit. 7. There is no evidence of fraud that would, for the purposes of this case, invalidate or avoid the settlement made by the parties to the original suit. 8. Even if duress was used to effect the settlement, the settlement cannot thereby be avoided in this suit so as to enable the plaintiff to recover back in this suit money paid to effect the settlement."