CHURCH v. SWETLAND et al.

(Circuit Court of Appeals, Second Circuit. April 18, 1916.)

No. 110.

1. DISCOVERY ⬳20—IN EQUITY—SUFFICIENCY OF BILL.

A bill for relief, and also for discovery as incidental to such relief, if it fails to state a cause of action for the relief, fails also as to the discovery.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 27; Dec. Dig. ⬳20.]

2. CORPORATIONS ⬳576 — REORGANIZATION — RIGHTS OF STOCKHOLDERS — GROUNDS FOR RELIEF—SUFFICIENCY OF BILL.

A bill based upon separate transactions by which complainant transferred bonds and other claims against a bankrupt corporation under a proposed reorganization plan considered, and *held* not to state a cause of action for relief in equity against defendants, who were subsequent transferees of the property, no fraud or mistake being alleged, and to have been properly dismissed as to such defendants.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2305, 2306; Dec. Dig. ⬳576.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Alfred W. Church against Horace M. Swetland and Chester Griswold, individually, and Horace M. Swetland, Robert R. Moore, Chester Griswold, Louis B. Rolston, Adelbert Hauschild, and Ernest E. Bruckman, as members of a committee of preferred stockholders and creditors of Wyckoff, Church & Partridge, Incorporated, under their agreement of April 15, 1912, George A. Ellis, Howard C. Dickinson, the Commercial Trust Company of New York City, John S. Sheppard, Jr., receiver and trustee in bankruptcy of Wyckoff, Church & Partridge, Incorporated, the Vaughan Car Company, Incorporated, and the Swetland Operating Company. From a decree dismissing the bill as to certain defendants, complainant appeals. Affirmed.

On March 12, 1912, a petition was filed in the Southern District of New York asking that the corporation of Wyckoff, Church & Partridge, Incorporated, be declared a bankrupt. Upon the adjudication defendant Sheppard was appointed receiver and later was made trustee of the bankrupt. The bill of complaint alleged that complainant was the owner of 250 shares of the preferred stock of the bankrupt company, and on April 15, 1912, signed an agreement between a committee of the creditors and the preferred stockholders of the bankrupt company. Pursuant to the terms of that agreement complainant deposited his preferred stock with the Commercial Trust Company of New York City, depository; and pursuant to the agreement Clarence F. Wyckoff and Ernest S. Partridge also signed the agreement, and with the consent of complainant deposited with the Commercial Trust Company 3,130 shares of the preferred stock of the bankrupt company, which shares complainant avers he was entitled to as collateral for an indebtedness by Wyckoff to complainant. On April 26, 1912, Wyckoff and Partridge transferred to complainant all their right as preferred stockholders, and on May 25, 1912, the complainant notified the committee of creditors and the Commercial Trust Company of the transfer. The complainant was also an unsecured creditor

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the bankrupt to the extent of $9,250, and deposited his claims, which were subsequently duly proved and allowed in the bankruptcy proceedings.

The Committee for the creditors and preferred stockholders, it is averred, never notified the complainant of the plan of reorganization of the bankrupt corporation, as was provided for in the agreement, and never notified him that unless he agreed to the plan he might withdraw his preferred stock or his claims, in accordance with the terms of the agreement, and he asserts that he never had any opportunity to withdraw. It is also averred that in November, 1912, certain of the defendants and the firm of H. B. Hollins & Co. made an offer to the receiver by which they agreed to purchase all the assets and property of the bankrupt, except a certain claim, for the sum of $150,000, and that the receiver accepted the offer with the consent and approval of the committee of creditors and preferred stockholders, and that the property was transferred to those of the defendants who made the offer; that $100,000 was paid over to the receiver as agreed upon, but the balance, $50,000, has never been paid to him; and that the defendants, who originally agreed to pay it, now say they are unable to do so.

It is averred that certain of the defendants, Ellis, Dickinson, and Griswold, organized the Vaughan Car Company, Incorporated, also a defendant herein, and that all the assets of the bankrupt were transferred to that company, and that it was not an innocent purchaser for value without notice of the rights of the receiver and trustee in bankruptcy. The Vaughan Company has a capital of $1,350,000, and the said stock is alleged to have been issued as full-paid stock in consideration of the transfer to it of the assets of the bankrupt, and that $225,000 of the stock which had been turned back into the treasury of the company was underwritten and sold to the firm of H. B. Hollins & Co. at 90 per cent., or for the sum of $202,000. It is averred that the defendants Ellis, Griswold, and Dickinson realized about $100,000 upon certain claims and other assets of the bankrupt which had been sold to them, and that the amount so realized was turned over by them to the receiver or trustee of the bankrupt, as part payment of the purchase price of the property sold to them as aforesaid, and that the portion thereof applicable to complainant's claims is more than $3,000.

It is averred that certain real estate owned by the bankrupt, and purchased by Ellis, Griswold, and Dickinson as aforesaid, was sold by them subject to a mortgage thereon made or assumed by the bankrupt, to secure an issue of $200,000 of bonds, to defendant Swetland, or the Swetland Operating Company, also a defendant, and that the vendee was not an innocent purchaser for value without notice of the rights of the receiver and trustee of the bankrupt. Swetland, it is alleged, was at all the times mentioned in the bill a stockholder and director of the bankrupt company; that in January and February, 1912, he knew that the company was in need of money and was in financial straits, and he proposed to loan it $105,473.68, provided it delivered to him its notes for $150,000, and also gave him as collateral security 150 bonds, $150,000, secured by a first mortgage on certain real estate, which bonds he knew were good and worth par and interest; that Swetland induced Wyckoff and Partridge, as his representatives, to procure from complainant for him as collateral $150,000 of bonds, and to arrange with the officers of the bankrupt to have a stockholders' and directors' meeting to consummate the loan as aforesaid.

It is stated that there had been deposited with the Title Guarantee & Trust Company, as collateral for the performance of a contract between complainant and Wyckoff for the payment to complainant of $450,000 for the purchase of certain property, the said issue of $200,000 of bonds of the bankrupt company, together with the $250,000 of the preferred stock of that company, and $450,000 of the common stock, and that complainant was induced by Swetland to allow Wyckoff to withdraw from said collateral so deposited as aforesaid $150,000 of the bonds to be delivered as collateral to Swetland, upon the understanding and representation by the latter to complainant that the credit of the bankrupt would be saved by such pledge of the bonds, and that Swetland would take charge and manage the affairs of the corporation, would save its credit, arrange its finances, and prevent the company from go-

ing into bankruptcy; that complainant, relying on these representations, caused $150,000 of bonds to be delivered to Swetland, and that the latter and Wyckoff agreed that the bonds still belonged to complainant as collateral security, subject to the right of Swetland to hold them as collateral. Swetland then loaned the bankrupt $105,473.68, took its notes for $150,000, and with complainant's consent obtained $150,000 of the bonds of the bankrupt to hold as collateral as aforesaid. Thereupon Swetland became chairman of the board of directors of the bankrupt.

It is averred that Swetland deposited his claim as holder of $150,000 of notes of the bankrupt stockholders' and creditors' committee, and signed the agreement of April 15, 1912, and said claim was proved and allowed and thereafter Swetland transferred and assigned to Ellis his claim on said notes for $150,000, but retained possession of said $150,000 of bonds and claimed to own them absolutely. It is averred that complainant assigned to defendant Ellis certain claims belonging to complainant arising out of the affairs, and consisting of promissory notes made by the bankrupt, amounting to the sum of $9,250 and a claim for about $20,000 arising out of money advanced to said bankrupt by complainant, and also a claim of complainant arising out of the pledging with the defendant Swetland of $150,000 of bonds, and with the Commercial Trust Company of New York City the remaining $50,000 of bonds of the bankrupt which are hereinbefore mentioned, in accordance with the terms of a letter which defendant Ellis wrote to complainant.

In that letter, dated October 25, 1912, Ellis agreed as follows: "In consideration of your assignment to me of (1) claims of $29,250, against Wyckoff, Church & Partridge, Incorporated, and (2) interest and equity in bonds Wyckoff, Church & Partridge, Incorporated, par value $200,000, I agree, at my option, either to (1) reassign said claims and equity to you within sixty (60) days from date; or (2) pay to you the sum of $29,250; or (3) deliver to you as security for the payment of $29,250 assignments of unsecured claims against Wyckoff, Church & Partridge, Incorporated, to the amount of $150,000, with the understanding that you may retain said assignments and retain said amount of $29,250 from the dividends paid thereon, and deliver to me the balance; or (4) to pay you $29,250 out of the proceeds of liquidation of assets which may be transferred to me individually, or to me with others, by John S. Sheppard, Jr., as receiver of Wyckoff, Church & Partridge, Incorporated, after the payment of the receiver in full, together with expenses, and after the release of such bond or guaranty as may be given to secure an offer made for such assets."

It is stated that subsequently Ellis transferred to Swetland all of complainant's interest in $200,000 of bonds of the bankrupt, and that Swetland transferred to Ellis all of Swetland's interest in, and the dividends payable on, the $150,000 of the notes of the bankrupt which were given to Swetland at the time he advanced to the bankrupt the sum of $105,473.68 just prior to the appointment of the receiver, which notes were deposited with the creditors' and stockholders' committee, of which committee Swetland was chairman, and that at the time of the assignment Swetland as holder of the bonds executed a release running to the trustee in bankruptcy of any claim on the bonds against the property covered by the mortgage which secured the bonds; that Swetland also assigned to Ellis his interest in and dividends payable upon the notes of the bankrupt, amounting to $50,000, which had been held by the Commercial Trust Company, and for which notes the latter company also held as collateral security $50,000 of the bonds of the bankrupt; and that said transfers were made pursuant to a certain agreement dated October, 1912, which agreement is set out at length in the bill, in which various transactions were agreed to be performed which need not in detail be set forth herein.

It is averred that in April, 1913, the complainant addressed a letter to Griswold, Ellis & Dickinson, in which, after referring to the foregoing agreement of October 25, 1912, he wrote: "I hereby agree, in consideration of one dollar ($1) and other valuable considerations, the receipt whereof is hereby acknowledged, that you may transfer and assign to the Vaughan Car Company, Incorporated, the Kingston property and all assets relating to Vaughan

cars in accordance with a prospectus heretofore presented to me with the following change; that you receive the promissory note of the Vaughan Car Company for ten thousand dollars ($10,000), instead of the second mortgage for forty thousand dollars ($40,000), and I further agree that, in consideration of your making such transfer to the Vaughan Car Company, I will accept in full satisfaction of all my claim against George A. Ellis under said agreement of October 25, 1912, the common stock of the Vaughan Car Company of the par value of fifty thousand dollars ($50,000), in case sufficient moneys are not available to make the payment to me in accordance with the fourth paragraph of said agreement of George A. Ellis."

The bill, however, does not aver that Ellis ever agreed to this modification of the agreement of October 25, 1912. It is averred that defendant Ellis did not make an election or tender to complainant pursuant to the terms of his letter of October 25, 1912, nor pursuant to the letter dated April, 1913; and it is averred that complainant has never received any actual consideration for the last-named letter; and it avers that Ellis has never returned the claims against the bankrupt assigned as above set forth, or the interest and equity of the complainant in and to the $200,000 of bonds. It is averred that after the $150,000 of bonds of the bankrupt were turned over by complainant to defendant Swetland as collateral for the latter's loan of $105,473.68 to the bankrupt, a paper dated April 25, 1913, was executed by complainant, defendant Swetland, and Wyckoff & Partridge, which stated the terms upon which the said bonds were turned over as collateral as aforesaid to Swetland. This writing is set forth in full and contains, among others, the following provision: "V. Upon payment in any manner (except by sale of the bonds), before, at, or after maturity, of the full amount of said note to Mr. Swetland, the bonds shall be returned to Mr. Church upon his receipt or order for the delivery of the same. Until sale the interest on said bonds shall be paid to Mr. Wyckoff, subject to his agreement with Mr. Church. This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective personal representative and assigns."

It is averred that defendant Ellis undertook to assign to the committee of creditors and stockholders of the bankrupt all of complainant's interest in and dividends payable upon the notes of the bankrupt, held by complainant for $9,250, with the understanding that the dividends thereupon should be used for the expenses of the committee. It is averred that defendant Ellis, as assignee of complainant, proved in the bankruptcy proceedings the claim arising out of the $20,000 advanced by complainant to the bankrupt, and that said claim was allowed.

It is averred that on January 5, 1914, the defendant Sheppard, as trustee of the bankrupt, filed a petition in which he stated that he had been informed by defendant Ellis that neither Ellis, Griswold, nor Dickinson could pay the last installment of $50,000 due upon their purchase of the property of the bankrupt, and that from inquiries he had made as to the financial responsibility of these persons he was unable to find that they were able to respond, and also that he had received a written offer from them that, in consideration of their being released from all liability respecting the aforesaid liability of $50,000, they would secure the cancellation of the following claims proved and allowed against the estate of the bankrupt: (1) Swetland's claim for $150,000 filed by the creditor's committee as assignee. (2) The Commercial Trust Company's claim filed by Ellis as assignee, for $50,408.50, being the amount of the notes and interest held by the Trust Company secured by the $50,000 of bonds. (3) A claim of complainant for $20,000 arising out of moneys advanced by complainant to the bankrupt and assigned to Ellis.

It is averred that complainant, on receiving notice from the referee in bankruptcy of a meeting of creditors to be held to pass upon the advisability of accepting the aforesaid offer of Ellis, Griswold & Dickinson, notified the latter and the trustee and the creditors' and stockholders' committee that Ellis had no right to assign to any one the claims against the bankrupt belonging to complainant arising out of the notes of the bankrupt amounting to $9,250 and the claim of $20,000 for money advanced by complainant to the bankrupt, and to claims arising out of complainant's right to $200,000 of bonds

of the bankrupt, or any other claims belonging to Church, and that for the aforesaid reasons complainant objected to the acceptance of the offer made as aforesaid to the trustee.

Complainant asserts that he is entitled to receive from defendant Swetland $50,000 of bonds, or, if not entitled to the bonds, that he is entitled to a claim for $50,000, which is the value of the bonds against the assets of the bankrupt, and to have his claim proved and allowed to that extent. It is further averred that complainant has never received the sum of $450,000, for which the bonds and stock of the bankrupt were pledged, nor any sum of money whatsoever, out of the assets of the bankrupt.

John M. Shedd, of New York City (William G. Bates, of New York City, of counsel), for appellant.

Parker, Davis & Wagner, of New York City (Arnold L. Davis, of New York City, of counsel), for appellees Horace M. Swetland and others.

Campbell, Moore & Amerman, of New York City (Henry Amerman, of New York City, of counsel), for appellees Commercial Trust Co. of New York and Robert R. Moore.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The complaint in this case, the main averments of which have been summarized above, covers 34 printed pages. The facts are somewhat complicated, and the complaint is unusual, and, as it appears to us, somewhat extraordinary. The court is asked to fix and determine the rights of the complainant against any of the defendants and to determine the complainant's interest in any of the property mentioned in the bill. The defendant Swetland is called upon to disclose in his answer what consideration was paid to Griswold, Dickinson and Ellis when the leases and buildings of the bankrupt were purchased from them subject to the mortgage of $200,000. He is also called upon to state in whose name the title was taken and in whose name it now stands; and if the title stands in the name of the Swetland Operating Company, the complainant wishes to be informed what securities of that company were issued to defendant Swetland, and what securities of that company are now held by him. Swetland is also called upon to say who now holds the notes of the bankrupt, aggregating $150,000, given to him when he loaned $105,000 to the bankrupt. Complainant also wants Swetland to say who now holds the $150,000 of bonds of the bankrupt, which were procured from the complainant at the time Swetland made the loan to the bankrupt; and the court is also asked to issue an injunction to restrain Swetland from disposing of any of the bonds.

The court below dismissed the bill as against defendants Swetland, Bruckman, and Moore as members of the creditors' and stockholders' committee, as against Swetland individually, the Swetland Operating Company, and the Commercial Trust Company. As to those defendants it was dismissed on a memorandum opinion, stating that, if a cause of action is stated against any of them, it is one at law, and not in equity. The bill was allowed to stand as against defendant Ellis, as he had not moved to dismiss.

[1] Where, in a bill for discovery and relief, the discovery sought is incident to the relief sought, a demurrer well taken to the relief is held to hold good as to the discovery also. In McClanahan v. Davis, 8 How. 170, 183, 12 L. Ed. 1033 (1850), Mr. Justice Nelson, speaking for the court, said:

"The complainant having, in our judgment, failed to set forth any foundation for relief, the right to the discovery, which is claimed as incidental, of course fails with it."

[2] As the complainant asks for equitable relief, while not indicating the specific relief he thinks he is entitled to, and asks the court to determine and fix his rights as against the defendants in any of the property mentioned in his complaint, we have endeavored to find what justification he has for coming into a court of equity at all as against the appellants. If he has a complete and adequate remedy at law as respects them, the action of the court below in dismissing the bill as to them must be affirmed.

It appears that early in 1912 the bankrupt was financially embarrassed. The complainant and defendant Swetland were stockholders in it, and the latter offered to loan it $105,473.68, provided the corporation would deliver to him its notes for $150,000, together with collateral security, consisting of $150,000 of its bonds secured by a mortgage upon its real estate. The loan was made on the terms above stated. The bonds given to Swetland as security, according to complainant's averments, were bonds issued by the bankrupt, and which had been deposited with the Title Guarantee & Trust Company as collateral for the performance of a contract of purchase by which defendant Wyckoff was bound to complainant. The latter avers that he was induced by Swetland to allow Wyckoff to withdraw $150,000 of the bonds deposited as collateral with the Title Guarantee & Trust Company, and that complainant consented to the arrangement upon the assurance that the bankruptcy would be thereby prevented, and also upon an agreement that the bonds belonged to complainant as collateral security subject to the right of Swetland to hold them also as collateral security. This did not, however, prevent the bankruptcy and the receiver was appointed shortly thereafter, on March 12, 1912. Then in April the protective committee of creditors and stockholders was formed, with Swetland and Bruckman as members of it.

The complainant became a party to the committee agreement, depositing thereunder his shares of stock, and signing the agreement as an unsecured creditor, and assigning to the committee his claim for $9,250. The committee agreement which the complainant signed stated that the purpose was to devise and carry into effect an equitable and fair plan of reorganization. The agreement contained a provision declaring that neither the committee nor any member thereof should be liable "for any mistake of law or fact, or for any act, default, or omission of any other member, * * * and the committee or any member thereof cannot be held personally liable in any case for any act or acts of any agent or employé, or for its own acts or acts of any of its members, except in case of willful negligence or malfeasance." There are no allegations in the complaint which entitle the complain-

ant to relief as against Swetland and Bruckman as members of the committee. The committee seem to have been made parties to the bill because Ellis is alleged to have undertaken to transfer to it the dividends on the $9,250 claim against the bankrupt belonging to the complainant in order to pay the expenses of the committee. But this surely constitutes no ground for equitable relief and is wholly insufficient to make the committee trustees of any dividends Ellis undertook to transfer.

As respects the $150,000 of bonds which complainant consented should be turned over to Swetland to secure the latter on his loan to the bankrupt, the bill discloses no ground of equitable relief. The allegations of the complaint show that whatever interest Mr. Church originally had in the $150,000 of bonds was subject to the right of Mr. Swetland to hold them as collateral security for the note of the bankrupt. It does not appear that the note has ever been paid, and it is nowhere alleged that complainant's consent to the transfer of these bonds to Swetland was due to any mistake made by him or to any fraud practiced upon him. We are at a loss, therefore, to see at this stage of the transaction that he is entitled to any equitable relief as against Swetland, who appears to be a bona fide holder of them for value.

The subsequent agreement which the complainant made with Ellis, by which complainant assigned to Ellis his interest and equity in $200,-000 of the bonds (which included the bonds held by Swetland as collateral and $50,000 additional hereinafter referred to), certainly could not in any way operate to deprive Swetland of his right to hold these bonds as collateral for the notes, which were still unpaid, as Swetland was not a party to any such contract subsequently made, and there are no allegations that complainant was induced by mistake or fraud to enter into that contract.

Then Ellis, having obtained from complainant absolute assignment of his interest in the bonds and having a right as owner to transfer the same, actually transferred them to Swetland for a valuable consideration. Under the options reserved to Ellis under that contract, complainant has not yet received what Ellis agreed to pay him; but that does not invalidate the contract, and Ellis is not in default under it, for in its fourth paragraph it was provided that Ellis might pay out of the proceeds of liquidation of assets which might be transferred to him by the receiver after the payment of the receiver, etc., and that has not yet occurred. That agreement may, as against Ellis, entitle the complainant to equitable relief by impressing a trust on any money payable by the trustee in bankruptcy on the claims against the bankrupt's estate filed by Ellis. But whether it does or does not is not now before us, as Ellis is not a party to this appeal, and the question therefore is not decided. The fact that Ellis has not paid complainant certainly discloses no equitable claim against the moving defendants, and does not invalidate the title of Swetland.

The defendant Swetland, in addition to the $150,000 of bonds which he held as collateral, is alleged to have obtained $50,000 of other bonds, which were turned over to him by the Commercial Trust Com-

pany "pursuant to some arrangement unknown to complainant." As to these bonds complainant avers that he is—

"informed and believes that he is entitled to receive from Horace M. Swetland said $50,000 of bonds, or, if not entitled to said bonds, is entitled to a claim for $50,000, which is the value of said bonds, against the assets of Wyckoff, Church & Partridge, Incorporated, in the hands of its trustee in bankruptcy, and to have his claim proved and allowed to that extent."

What has been said above as to the $150,000 of bonds applies equally to the $50,000 of bonds held by the Commercial Trust Company. The latter company is not in this court complaining that Swetland has unlawfully as against it acquired the bonds; and the complainant having parted with its interest in them to Ellis has no right for reasons above stated to assail the transfer Ellis made of them to Swetland, and the claim which he alleges he has upon the assets in the hands of the trustee is a claim upon the assets to which Ellis is entitled and does not involve the moving defendants.

The complaint also alleges that complainant assigned to Ellis a claim against the bankrupt for $9,250 as well as one for $20,000. The latter claim was for moneys advanced to the bankrupt. The former was for notes made by the bankrupt and held by complainant. It is then averred that these claims were assigned by Ellis to the creditors' and stockholders' committee without authority. The reason assigned for this lack of authority is that Ellis had failed to comply with the terms of the agreement embodied in his letter of October 25, 1912. If Ellis failed to pay for these claims in accordance with his promise, he nevertheless held the legal title and could transfer it to one without notice, and after such a transfer notice given would be without effect upon the rights of the transferees. As to complainant's rights against Ellis growing out of any failure to perform the agreement of October 25, 1912, or as to the trustee holding for Ellis, we are not now concerned. It is enough to know now that, whatever rights he may have, he has no right to proceed in equity against the moving defendants.

We do not see upon the allegations of the complaint any possible relief which this court can grant complainant against the moving defendants herein. There is no contract which the complainant can have specifically performed. There is no contract which he can have reformed on account of mutual mistake. He alleges no mistake. There is no contract which he can have rescinded on the ground of fraud. He alleges no fraud. There is no vendor's lien against the moving defendants in favor of the complainant. A vendor's lien does not, in general, extend to personal property, although it extends to a leasehold. But the legal title to the leasehold was not in the complainant at any time, and at no time did he occupy the position of a vendor of the leaseholds or of any real estate. Neither is complainant entitled to an injunction. Where negotiable instruments have been fraudulently or illegally obtained, injunctions issue to prevent their alienation pending litigation. But there are no allegations that the bonds have been fraudulently or illegally acquired.

As against the moving defendants we are unable to spell out any

trust in complainant's favor. He relies on American Sugar Refining Company v. Fancher, 145 N. Y. 552, 40 N. E. 206, 27 L. R. A. 757. But that was a case in which defrauded vendors were allowed to claim in equity the proceeds of the sugars which the vendees had thereafter sold to bona fide purchasers. The ground upon which the case went was that the fraud which the vendees had practiced on the vendors made the former constructive trustees for the latter, so that they could follow the trust funds (the sugars) into the notes which the constructive trustees had received when they sold the sugars. That case is inapplicable to the facts of this case, for there are no allegations in the complaint that the complainant was induced by fraud to part with his property or surrender any of his rights.

He also relies on Newton v. Porter, 69 N. Y. 138, 25 Am. Rep. 152. That is a remarkable case, in which a party who had been deprived of his property, not by fraud, but by theft, was allowed to impress a trust upon the proceeds which the thief had received on selling the stolen negotiable bonds, which proceeds the owner was allowed to recover from persons who took them with notice. The principle finds some support in the authorities, although the cases are not agreed respecting it. The difficulty concerning it is the technical one that a trustee is one who holds a legal title, and the thief, of course, got no title at all. But, whatever may be thought of that decision, and we are not expressing either approval or disapproval of it, we are unable to perceive its relevancy to the facts before us.

Courts of equity in proper cases undoubtedly assume jurisdiction to avoid a multiplicity of suits. Where there is one common right to be established against several distinct persons, the court will allow the suit to be brought in order to relieve the complainant from the necessity of bringing a number of separate suits, each of which only decides the particular right in question between the complainant and the defendant thereto. Whether the existence of a mere community of interest, as distinguished from a common right, will suffice to give equity jurisdiction, is a question upon which the courts are not wholly in accord. See the case of Watson v. Huntington, 215 Fed. 472, 131 C. C. A. 520, decided by this court in 1914.

The complainant is wrong in supposing that he is entitled to bring one suit in equity and join all the defendants upon the theory that his separate claims arise from the same transaction, the failure of the bankrupt corporation. His claims do not arise from one transaction, as he asserts, but from a number of separate transactions, and they are not so connected with the failure of the bankrupt as to create "a common right," or a community of interest, within the meaning of the rule.

We think it unnecessary to pursue the subject farther. We have carefully considered the complainant's points, and have reached the conclusion that no error was committed by the court below. To consider the matter more in detail would only unnecessarily extend an opinion already too long.

Decree affirmed.