CHURCH V. SWETLAND 289

CHURCH v. SWETLAND et al.

(Circuit Court of Appeals, Second Circuit. June 4, 1917.)

No. 260.

1. CANCELLATION OF INSTRUMENTS ☞37(2)—PLEADING—EXCUSES FOR LACHES.
   Where the complainant, in a suit to avoid transactions on the ground of fraud occurring over three years prior to the filing of the bill, had in the meantime filed other bills for relief in which he did not plead fraud, if he did not know of the fraud when they were filed, and subsequently discovered it, he should have so alleged.

2. CONTRACTS ☞270(2)—RESCISSION—TIME FOR RESCISSION.
   A party loses his right to rescind on the ground of fraud by not availing himself of it within a reasonable time after he discovers it.

3. CONTRACTS ☞270(2)—TIME FOR RESCISSION—LACHES.
   A party, by waiting over three years before suing to avoid transactions on the ground of fraud, waived his right to complain thereof, especially where, in previous suits attacking the transactions, he did not suggest that they were in any degree affected with fraud.

4. FRAUD ☞12—REPRESENTATIONS CONSTITUTING FRAUD—FACTS OR PROMISES.
   As a rule false representations, to constitute fraud, must relate to some material past or existing fact, and not to mere promises or statements of intention.

5. PRINCIPAL AND SURETY ☞7—INVALIDITY OF PRINCIPAL'S CONTRACT—RIGHT OF SURETY TO AVOID.
   Complainant held bonds of the W. Co. as collateral security. S. requested him to loan the bonds to the company to enable it to obtain a loan and save it from insolvency, stating that this would liquidate all its pressing debts, and enable it to continue in business, and that if he made the loan he would take charge of the company, keep it on its feet, and not allow insolvency or bankruptcy proceedings to intervene. Complainant accordingly loaned the bonds to the company to be used as collateral for a loan wherever it might be secured. It was not alleged that any promises were made to complainant with no intention of fulfilling them, but it was alleged that thereafter S. made a loan to the corporation on the security of such bonds, and promised to make other loans necessary to save it from insolvency or bankruptcy on the same security, and that when the loan was made he secretly and fraudulently intended that the note should be immediately called under a provision thereunder making it due forthwith if bankruptcy proceedings should be instituted, and that shortly thereafter he procured a petition in bankruptcy to be filed and asserted the right to declare the note due. *Held* that, if the representations made with no intention of performing them constitute fraud, it nevertheless was a fraud on the company, and not on complainant, and gave complainant no right to avoid the loan and recover the bonds, as defenses personal to the principal do not operate in favor of a surety.

6. PLEDGES ☞25—LOSS OF LIEN—TRANSACTIONS BETWEEN THIRD PARTIES.
   Where a corporation, purchasing all of the stock of another company and all of its assets, assumed its debts and obligations, including notes held by a trust company and secured by bonds loaned to the maker of the notes by plaintiff, an agreement of the purchasing corporation that these bonds should be returned to plaintiff could not affect the right of the trust company to hold them until its debt was paid.

7. PLEDGES ☞19—DEBTS SECURED—RENEWAL OF NOTE.
   Where property is pledged to secure a note, the extension or renewal of the note does not, in the absence of a distinct agreement, affect the pledge, but it continues as a valid and effectual security until the debt is paid.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
   243 F.—19

8. **PLEDGES** ⬅19—DEBTS SECURED—RENEWAL OF NOTE.

Where a corporation gave notes with bonds as collateral security, a renewal of the notes by a new corporation, which without consideration took over the assets and assumed the debts and contracts and even the name of the old corporation with slight alteration, did not release the collateral, as the new corporation was the successor of the old company, and the case was not one involving a discharge of an old debtor and an acceptance in its stead of a new debtor not otherwise liable.

9. **PLEDGES** ⬅38—ASSIGNMENTS OF PLEDGE OR DEBT—RIGHTS OF ASSIGNEE.

One to whom the holder of notes secured by collateral assigned the notes and the collateral acquired the same rights in all respects as those which the original holder possessed.

10. **ASSIGNMENTS** ⬅78—RIGHTS OF ASSIGNEE IN COLLATERAL SECURITY.

Where a pledgee assigns the principal obligation without assigning the pledge, equity will hold it a trustee of the collateral for the transferee.

11. **PLEDGES** ⬅38—ASSIGNMENT OF DEBT AND PLEDGE—RIGHTS OF ASSIGNEE.

That a transferee of notes secured by bonds pledged as collateral knew of an agreement by one assuming the pledgor's debts that the bonds should be returned to plaintiff, who loaned them to the pledgor, did not affect his rights in the collateral.

12. **PLEDGES** ⬅25—LOSS OF LIEN—TRANSACTIONS BETWEEN THIRD PARTIES.

The rights of the original holder of the notes and collateral security would not have been impaired in the slightest degree, even assuming that it was fully informed of such agreement.

13. **TRUSTS** ⬅343—CONSTRUCTIVE TRUST—WAIVER OF RIGHTS.

Where complainant loaned bonds to a corporation which pledged them to S. as security for a note on his promise to make other loans and keep it out of insolvency, if such promise was one upon which complainant individually could rely so that a failure to keep it entitled him to have S. declared a trustee for him in the bonds, he waived such right by assigning his interest and equity in the bonds with full knowledge that bankruptcy proceedings had been instituted.

14. **ASSIGNMENTS** ⬅64—RIGHT TO AVOID—FRAUD.

Complainant claimed the right to have S. declared a trustee for him in certain bonds. Without fraud and for a valuable consideration he assigned his interest and equity in the bonds to E. He alleged that S. had so complicated the legal situation and his legal rights that he was led to believe that he would be unable to secure possession of the bonds, and would be defeated if he brought action therefor, and that he was thereby induced to consent to the assignment, but it was not alleged that E. led him into any such belief, and it was expressly stated that he was not charged with any fraud. *Held* that, even though the general rule that misrepresentations of law do not constitute fraud did not apply, complainant had no right to avoid the assignment, nor were his rights enlarged by the fact that E. obtained the assignment with the intention of transferring the title to S., and did assign to S. the interest acquired.

15. **PLEADING** ⬅8(15)—CONCLUSIONS—FRAUD.

An allegation that an agreement was procured by fraudulent means and devices, without stating what means and devices were resorted to, was a mere conclusion of law, which must be disregarded, as in pleading fraud the facts relied upon as constituting the fraud must be set out, and not conclusions, and general charges of fraud or that acts were fraudulently committed are without avail, unless accompanied by statements of specific facts amounting to fraud.

Appeal from the District Court of the United States for the Southern District of New York.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Alfred W. Church against Horace M. Swetland and others. From a decree dismissing the bill as against certain defendants, complainant appeals. Affirmed.

See, also, 233 Fed. 891, 147 C. C. A. 565.

The complainant is a citizen of the state of Connecticut. The defendants Swetland and Ellis are citizens of the state of New York and are residents of the Southern district. The defendant Sheppard is also a citizen of the state of New York and a resident of the Southern district, and on March 12, 1912, was appointed receiver, and on November 22, 1912, trustee of Wyckoff, Church & Partridge, Inc., hereinafter called the Wyckoff Company. The Commercial Trust Company of New York City, hereinafter called the Trust Company, is a corporation organized and existing under the laws of the state of New York and is a resident of the Southern district of New York. The complainant and the defendant Swetland were members of the board of directors of the Wyckoff Company. The complainant for some time prior to February 14, 1912, is alleged to have been lawfully and legally in possession of $200,000 of first mortgage bonds which he was holding as collateral security. The bonds were issued by the Wyckoff Company, and were secured by a first mortgage upon long-term leasehold property situated in the city and county of New York, and was valued at $400,000. He was also lawfully and legally in possession of $250,000 of the preferred stock and of $450,000 of the common stock of the Wyckoff Company as collateral security for the payment of $450,000 to him by Clarence F. Wyckoff, the possession being pursuant to an agreement in writing dated April 1, 1909. No part of that sum has ever been paid. The District Judge, on motion, dismissed the bill as against all the defendants except Ellis on the ground that it failed to state a cause of action. As against Ellis the cause of action was remanded to the law side. The transactions complained of in the bill and the relief asked for are stated in the opinion of the court.

John M. Shedd and Hector M. Hitchings, both of New York City, solicitors for appellant.

Parker, Davis & Wagner, of New York City (Arnold L. Davis and N. Raymond Heater, both of New York City, of counsel), for appellee Swetland.

Lemuel E. Quigg, of New York City (George H. D. Foster, of New York City, of counsel), for appellee Commercial Trust Co.

Hays, Hershfield & Wolf, of New York City (Henry H. Kaufman, of New York City, of counsel), solicitors for appellee Sheppard.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The complainant heretofore filed a bill against the same defendants in the same court, which bill related to the same transactions of which complaint is made in the present suit. We dismissed the bill, after a consideration of its merits in a lengthy opinion, which concludes as follows:

"The complainant is wrong in supposing that he is entitled to bring one suit in equity and join all the defendants upon the theory that his separate claims arise from the same transaction, the failure of the bankrupt corporation. His claims do not arise from one transaction, as he asserts, but from a number of separate transactions, and they are not so connected with the failure of the bankrupt as to create 'a common right,' or a community of interest, within the meaning of the rule." 233 Fed. 891, 899, 147 C. C. A. 565, 573.

The present bill differs from the former not only in the fact that certain persons who were defendants in that suit are not made defend-

ants in this one, but that this bill makes specific allegations of fraud, whereas the first bill contained no charges of fraud against any of the parties. While all the transactions complained of in the present bill were included in the former one, certain transactions included in that are omitted from this. The bill covers 48 printed pages instead of 34 pages, which in the former suit sufficed to state the wrongs for which complainant sought relief.

It is observed, too, that this is the fourth complaint against the respondents in regard to the transactions herein involved. All the previous complaints were dismissed by the court on motion because they failed to state a cause of action either at law or in equity. For the same reason and on motion the court below has dismissed the present bill, except as against Ellis, the cause of action as to him being remanded to the law side, as before stated.

[1, 2] The present bill was not filed until November, 1916. It was then for the first time that complainant sought to avoid on the ground of fraud transactions which took place in February, 1912. No excuse is offered for this delay. It is not alleged that complainant did not know of the fraud at the time he filed the former bills, although if he then knew of the fraud he should have alleged it. If he did not then know of it, but has discovered it since, he should have so stated. For it is a principle of equity that a party loses his right to rescind on the ground of fraud by not availing himself of it within a reasonable time after he discovers it. In Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798, the Supreme Court declared that:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, * * * he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted."

In McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29, 35 L. Ed. 804, these words are quoted approvingly by the court, and it was said that, if the plaintiff in that case had the right to repudiate on the ground of fraud a settlement by which certain notes were surrendered, "it was his duty to do so as soon as advised of all the circumstances justifying such repudiation; and he also must have repudiated it in toto."

[3] While this case might be disposed of upon the ground that the complainant by his delay had waived his right to complain of fraud, if fraud in fact existed, and especially in view of the fact that in his previous suits attacking the transactions involved herein his failure to suggest that any of the transactions were in any degree affected with fraud might be deemed a waiver, still we are inclined not to dispose of the case upon a technicality, but to consider it upon its merits.

1. The bill asks that $200,000 of first mortgage bonds which complainant loaned to be used as collateral be delivered up to him by Swetland. If the said bonds have been in any way canceled or discharged or their lien value interfered with or destroyed by and through any act of Swetland's, the bill asks that in such case the complainant may be adjudged to have a just, equitable, and valid first lien against the leasehold property mortgaged to secure their payment. And the bill

avers that complainant is ready and willing to do and perform all acts and things and to pay such moneys as to the court shall seem just and equitable as a condition of the return of the bonds.

2. The bill asks the court to set aside certain contracts which are alleged to be illegal, unlawful, and fraudulent. The basis of the allegation does not grow out of the subject-matter of the contracts, and the illegality, if it exists, must be found in the facts alleged as to the manner in which the contracts were obtained.

3. Certain conduct of Swetland's is alleged which it is claimed amounts to a direct breach of trust. It grows out of the disregard of certain representations, promises, and agreements he is said to have made to and with the complainant. The court is asked, therefore, to declare Swetland a trustee and to require him to account as such.

4. The bill also asks that certain claims which complainant possessed against the estate in the hands of Sheppard as trustee in bankruptcy, and which had been released, may be re-established in complainant's favor.

Certain other relief is sought to which it is not necessary to refer specifically at this time.

It is alleged that the contract of February 14, 1912, by which the Wyckoff Company gave its note for $150,000 to defendant Swetland in return for $105,473.68 advanced by him to it when it was in financial embarrassment, was "an illegal, unlawful, and fraudulent agreement." It was to secure the payment of this note that $150,000 of the bonds now sought to be recovered were pledged. This makes it necessary to consider how Swetland obtained the note and the collateral.

It appears from the bill that some time in January, 1912, defendant Swetland and one E. S. Partridge, vice president of the Wyckoff company, requested complainant, in their capacity as directors, to allow the company to have the use of $150,000 of first mortgage bonds which complainant was holding as collateral for a debt owing to him by Clarence F. Wyckoff. This they requested him to do for the purpose of saving the Wyckoff Company from insolvency.

The bill states that they requested him to loan the bonds to the corporation "for the purpose of being used by said corporation as collateral security for the repayment of a loan to said company of about one hundred thousand dollars ($100,000), wherever said loan might be secured, and stated and represented to complainant that the said bonds would be forthwith returned to your complainant whenever said loan was repaid."

It also appears that, as an inducement to complainant to consent to this use of the bonds, it was stated by Swetland that he had carefully examined into the company's financial condition, and that, if it could secure a loan of $100,000 for one year, this would liquidate all the company's pressing debts and enable it to continue in business; that Swetland also stated that *if* he (Swetland) made the loan he would personally take charge of the management of the company, would keep and maintain it on its feet, and not allow insolvency or bankruptcy proceedings to intervene and destroy it; that complainant believed the statements so made, and relied upon them, and without consideration placed $150,000 of bonds with Wyckoff and Partridge, the president

and vice president 'of the company. This, of course, means that they were handed to the company, and with authority to pledge them as collateral for a loan to the company, "wherever said loan might be secured." Complainant did not turn them over to Swetland to secure a loan which he agreed to make; nor were they turned over to the company to be used only in case Swetland made the loan, or in case a loan was made on any specified condition. There are no allegations that there was any such understanding or agreement. There is no allegation that any representation made by Swetland to complainant at that time, and there is no allegation that any other interview occurred at which the subject was discussed between them, was false as to existing facts, or that any promises were made to complainant with no intention of fulfilling them.

Then it is alleged that on February 14, 1912, the Wyckoff Company gave the note for $150,000 to Swetland as a consideration for a loan of $105,473.68 made by him to it, and that the said note was payable one year after the date thereof, without interest, and that it contained a provision that it should forthwith become due and payable in case any judgment, assignment, or bankruptcy proceeding should be brought against the company. At the time the note was given the company turned over $150,000 in bonds loaned to it by complainant to be used as security for the repayment of the note. It was also agreed at that time between the company and Swetland that he should have the right to retain the bonds as collateral security for any and all further and future loans which he might make the company in case further loans became necessary to save it from insolvency or bankruptcy, "which said loans said Swetland then and there promised and agreed to make if same became necessary." It is, however, alleged that at the time the note was given to Swetland he secretly and fraudulently intended that the note should not run for a year, but should be immediately called. And that within a month thereafter he procured a petition in bankruptcy to be filed against the Wyckoff Company by another company of which he was at the time president, and that through that proceeding he asserted and claimed the right to at once declare due and owing the $150,000 note which he had received from the company.

It may be remarked that immediately after the interviews which took place some time in January between complainant and Swetland the complainant left New York for Illinois, and was brought back ill early in February, and taken to a hospital, where an operation was performed upon him, which confined him there until after February 14th, and the bill states that he had no opportunity to and did not obtain any information in regard to the affairs of the company until after Swetland made his loan. Whatever representations Swetland made to the company at the time of the loan, therefore, were unknown to complainant and could not have influenced his conduct.

[4, 5] As a rule, false representations, to constitute fraud, must relate to some material past or existing fact. And it has been frequently held, therefore, that a charge of fraud cannot be predicated upon a mere promise, nor upon a mere statement of intention not amounting to a binding promise. Jordon v. Money, 5 H. L. Cas. 185; Citizens' Bank v. New Orleans First National Bank, L. R. 6 H. L. 352; Knowl-

ton v. Keenan 146 Mass. 86, 15 N. E. 127, 4 Am. St. Rep. 282; Norfolk, etc., Hosiery Co. v. Arnold, 49 N. J. Eq. 390, 23 Atl. 514; Hodsden v. Hodsden, 69 Minn. 486, 72 N. W. 562; Argall v. Cook, 43 Conn. 165. But many cases hold that the above rule does not apply if the promise is made to induce action and with the intention at the time not to perform the same. Ayres v. French, 41 Conn. 142; Sweet v. Kimball, 166 Mass. 332, 44 N. E. 243, 55 Am. St. Rep. 406; Laing v. McKee, 13 Mich. 124, 87 Am. Dec. 738; Chicago, etc., R. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Goodwin v. Horne, 60 N. H. 486; Birmingham Warehouse, etc., Co. v. Elyton Land Co., 93 Ala. 549, 9 South. 235; Albits v. Minneapolis, etc., R. Co., 40 Minn. 476, 42 N. W. 394; Am. & Eng. Encyc. of Law, vol. 14, p. 51; Bispham's Eq. (8th Ed.) § 211. The reason given is that the promisor impliedly represents that he intends to perform his promise, and therefore falsely represents the condition of his mind, which is a representation of fact. In California it has been expressly declared by statute that a promise made by statute without any intention of performing it, and made with intent to deceive, shall constitute actual fraud. Civil Code of Cal. § 1572. See Cockrill v. Hall, 65 Cal. 326, 4 Pac. 33; Brison v. Brison, 75 Cal. 525, 17 Pac. 689, 7 Am. St. Rep. 189. Some of the courts, however, insist that no representation which relates to the future can amount to fraud, no matter with what intention it may be made. Farris v. Strong, 24 Colo. 107, 48 Pac. 963; Haenni v. Bleisch, 146 Ill. 262, 34 N. E. 153; Tufts v. Weinfeld, 88 Wis. 647, 60 N. W. 992; Balue v. Taylor, 136 Ind. 368, 36 N. E. 269. In Gage v. Lewis, 68 Ill. 604, a retiring partner represented to a surety that, if he would become responsible to him for the payment of the partnership debts, he would forever retire from the business, and in no manner compete with the surety and the remaining partner, who were going into the same business. Relying upon the distinction between a misrepresentation of an existing fact and of an unexecuted intention, the court held a surety not bound, notwithstanding the representations were made for the purpose of deceiving him. We intimate no opinion as to whether we think that case was properly decided, and it is not necessary now to determine which of these conflicting doctrines seems to us to be supported by the better reason. For the representations which are alleged to have been made with no intention of performing them were not made to complainant, but to the company, and were made several weeks after the complainant had turned over the bonds to it to be used as collateral for a loan to the company "wherever secured," and so far as the record discloses to be used unconditionally. If any fraud was committed by Swetland, it was a fraud upon the company and not upon complainant. And neither the company nor the trustee in bankruptcy has ever complained that any fraud was perpetrated, and neither has sought on that or any other ground to avoid the transaction. Assuming that fraud was practiced upon the company, the right to avoid the loan was personal to it. Defenses do not operate in favor of a surety which are personal to the principal. Van Kirk v. Adler, 111 Ala. 104, 20 South. 336; McCabe v. Raney, 32 Ind. 309; Boone County v. Jones, 54 Iowa, 699, 2 N. W. 987, 7 N. W. 155, 37

Am. St. Rep. 229; McCormick v. Hubbell, 4 Mont. 87, 5 Pac. 314, 32 Cyc. 149.

[6-8] This brings us to inquire as to the circumstances under which Swetland acquired the remaining $50,000 of the $200,000 bonds which the complainant seeks to recover into his possession. These bonds had been deposited by Clarence F. Wyckoff with complainant as security for the payment of Wyckoff's debt to the latter, and were then loaned by complainant to a corporation known as Wyckoff, Church & Partridge, which was subsequently absorbed by the W. A. Wood Automobile Manufacturing Company. The latter company purchased all the capital stock of the former company as well as all its assets, and assumed all its debts and obligations, including notes for $50,000 held by the Commercial Trust Company. To secure the payment of these notes these $50,000 of bonds had been deposited by Wyckoff, Church & Partridge with the Trust Company as collateral. Then the name was changed, in accordance with the provisions of the statute of the state of New York, to Wyckoff, Church & Partridge, Inc. Now it is alleged that it was agreed, at the time of the assumption of the debts, that these $50,000 of bonds deposited as collateral with the Commercial Trust Company should be returned to the possession of the complainant. It is not alleged, however, that the Trust Company ever agreed to the return of the collateral without payment of the notes, and no agreement made between the Wood Automobile Company and Wyckoff, Church & Partridge could affect the right of the Trust Company to continue to hold the collateral until it received payment of its debt. Neither the Wood Automobile Company nor Wyckoff, Church & Partridge, Inc., ever paid the notes. When they matured, renewal notes were given by the latter company, and the Trust Company continued to hold the collateral as before. Where property is pledged to secure a note, the extension or renewal of a note does not, in the absence of a distinct agreement of the parties, affect the pledge, but it continues as a valid and effectual security until the debt is paid. Merchants' National Bank v. Hall, 83 N. Y. 338, 38 Am. Rep. 434; Cotton v. Atlas National Bank, 145 Mass. 43, 12 N. E. 850; Emmetsburg First National Bank v. Gunhus, 133 Iowa, 409, 110 N. W. 611, 9 L. R. A. (N. S.) 471; Omaha First National Bank v. Goodman, 58 Neb. 701, 79 N. W. 1062. In this respect a contract of pledge differs from that of a personal surety, since the extension or renewal of a note without the consent of the surety releases him. James v. Pike, 23 La. Ann. 477. We do not overlook the fact that it has been held that upon the renewal of a note by different parties the pledgee has no right to retain as security for the new note property of a third person, deposited as collateral for the old note, without first obtaining his consent. Merchants', etc., National Bank v. Masonic Hall, 62 Ga. 271. But in the instant case the new corporation of Wyckoff, Church & Partridge, Inc., which renewed the notes, is simply the successor of the old company of Wyckoff, Church & Partridge, which gave the notes that were renewed. In taking over without consideration the assets, and assuming the debts and contracts, and even the name with slight alteration, it became the successor of the original company, and would have been liable to pay its

notes even if there had been no express agreement to that effect. When the notes were renewed it was not the ordinary case of a discharge of an old debtor and an acceptance in his stead of a new debtor not otherwise liable, but was more nearly analogous, so far as its effect upon the collateral is concerned, to that of a renewal note given by an executor under an agreement to pay out of the assets of the estate. That it would release the collateral must be denied.

[9, 10] Swetland purchased the renewal notes from the Commercial Trust Company, and it at the same time surrendered to him the bonds held as collateral. The Trust Company had the right to transfer the notes and the bonds collateral to them. Swetland, as its assignee, acquired the same rights in all respects as those which his assignor possessed. The right was a right to hold until the debt was discharged. And if the Trust Company had not transferred the bonds, equity would have held it a trustee of them for Swetland; for if a pledgee assigns the principal obligation without the pledge, the assignor holds the collateral as a trustee for the assignee.

[11] But it is alleged that at the time Swetland purchased the notes and acquired the bonds he had full knowledge of the agreement made with the Wood Automobile Company that it assumed the debts of Wyckoff, Church & Partridge, and agreed to return to complainant the $50,000 of bonds which the Trust Company held as collateral. But granting that Swetland had full knowledge of that arrangement, it would not impair his right to acquire from the Trust Company whatever rights it possessed in the notes and in the collateral. The rights of the Trust Company in the notes and in the collateral were the same after the agreement as they were before its making. If the Trust Company had ever assented to that agreement, and then in violation of it had delivered the collateral to Swetland, the complainant would hardly have failed in this bill to have asked relief also against that company in some form. But there is not an allegation in the whole bill, although the Trust Company is a defendant, that it ever in any way wronged the complainant.

[12] It seems, however, to be assumed by the bill that because Swetland was a director in the Trust Company, and knew of the agreement above mentioned, that in some way his knowledge is to be imputed to the Trust Company, and that the latter's rights in the collateral became thereby affected. It is quite unnecessary to say that as a rule knowledge of a director is not imputable to a corporation unless it is shown that such knowledge has been communicated to the other directors or officers, or that the director in question was present at a board meeting when the transaction involved was officially acted upon; and not even then, if his interest in the matter is adverse to that of his corporation. For even if it be assumed that the Trust Company was fully informed of the agreement made, such knowledge would not have impaired in the slightest degree its rights in the collateral, the Wood Automobile Company not having paid the notes or the collateral as it promised. We conclude, therefore, that there is nothing in the manner in which Swetland acquired the possession of any of the bonds which entitles this complainant to demand their return before the debts for which they are held are paid.

The agreement under which the $150,000 of bonds were obtained by Swetland was not an agreement between complainant and Swetland, but an agreement between the Wyckoff Company and Swetland. In asking that all fraudulent contracts obtained by Swetland from complainant be vacated and set aside, the court is not asked to set aside the contract under which the $150,000 of bonds were obtained. And if such were the prayer the court could not grant it, if the agreement be assumed voidable, for the reason that complainant sues in his individual capacity and not as a stockholder to redress a wrong done to the corporation.

[13] This brings us to a consideration of the agreement of October 25, 1912, in so far as that agreement affects the right of the complainant in the bonds. Under that agreement the complainant assigned to Ellis his "interest and equity in bonds Wyckoff, Church & Partridge, Inc., par value $200,000." This was eight months after the Wyckoff Company turned over the bonds to Swetland, and seven months after the petition in bankruptcy was filed. If Swetland's alleged promise to the company to keep it out of bankruptcy and to advance to it additional funds which it might need was a promise upon which the complainant individually could rely so that the failure to keep it could be set up by complainant as a breach of trust—a proposition we deny—this agreement with Ellis, made with full knowledge that the bankruptcy proceedings had been instituted, amounted to a waiver of his right. All his equity and interest in the bonds at that time passed to Ellis, and from that time he has had no interest and no equity in said bonds. This assignment to Ellis the complainant asks this court to set aside on the ground that Ellis is in default in the performance of his part of that agreement. We disposed of that proposition in the first suit when we said:

"Under the options reserved to Ellis under that contract, complainant has not yet received what Ellis agreed to pay him; but that does not invalidate the contract, and Ellis is not in default under it, for in its fourth paragraph it was provided that Ellis might pay out of the proceeds of liquidation of assets which might be transferred to him by the receiver after the payment of the receiver, etc., and that has not yet occurred." 233 Fed. 891, 897, 147 C. C. A. 565, 571.

[14] Again referring to this assignment to Ellis, and seeking to escape from the effect thereof, complainant alleges that Swetland had "so complicated the legal situation and the legal rights of your complainant as to said two hundred thousand dollars ($200,000) of first mortgage bonds that your complainant was led to believe that he would be unable to secure possession of said one hundred and fifty thousand dollars ($150,000) of first mortgage bonds and said fifty thousand dollars ($50,000) of first mortgage bonds, and that he would, in all probability, if he brought action for the same, be defeated in said action," and was thereby induced to consent to the agreement with Ellis. It is not alleged that Ellis occupied any fiduciary relation to the complainant. He is a member of the bar, and the bill expressly states that he is not charged with any fraud in securing the assignment. And if Ellis procured this assignment without fraud and for a valuable considera-

tion, he obtained whatever interest and title in the bonds the complain-- ant then had. If this assignment was obtained by Ellis without fraud, the fact that he may have obtained this assignment with the intention of transferring the title to Swetland, and the fact that he did assign to him the interest he acquired, does not in any way enlarge the complain-ant's rights. While the allegation is that complainant had been "led to believe," prior to this transfer, that if he brought an action to recover the bonds he would be defeated, he does not allege that Ellis led him into any such belief. So that it is not necessary to inquire whether circumstances exist which would take the case out of the general rule that misrepresentations of the law do not constitute fraud either at law or in equity, because every person is supposed to know the law. And while complainant relies throughout his bill on fraud, he is not in this court asking to be relieved on the ground of mistake. He does not allege that he mistook the legal effect of the agreement he made with Ellis.

[15] The bill states that at the time of this agreement the complainant was "believing and relying upon all the representations that had been made to him in regard to said bonds at the instance and instigation of said Swetland." But there is nothing stated in that connection as to what those representations were, whether they related to matters of law or matters of fact, or that they were false. If the representations meant were the representations which were made to complainant when Swetland induced him to let the Wyckoff Company have the use of the bonds, they already have been considered. A subsequent allegation, in another paragraph of the bill, that this agreement with Ellis was procured by Swetland, by "fraudulent means and devices," through Ellis, without stating what means and devices were resorted to, is a mere conclusion of law which must be disregarded.

In pleading fraud it is a well-established rule that the facts relied upon as constituting the alleged fraud must be set out, and not conclusions. A bill seeking relief on the ground of fraud must state the specific facts and circumstances constituting the fraud, and the facts so stated must be sufficient in themselves to show that the conduct complained of was fraudulent. General charges of fraud, or that acts were fraudulently committed, are without avail, unless accompanied by statements of specific facts amounting to fraud. All through this bill may be found general charges of fraud. It must be made to appear by the facts alleged, independent of mere conclusions, that if the allegations are true a fraud has been committed. An allegation that a thing is fraudulent is immaterial unless the allegation fits the facts to which it is applied. We have examined this bill with care. The facts are complicated, the amount involved is considerable, and from the earliest times down to the present wrongs accomplished through fraud have appealed with peculiar force to courts of chancery for redress. But a close scrutiny of the allegations of this bill has convinced us that the complainant is not entitled to the relief he seeks.

As the complainant has parted with all interest in the bonds, he is in no position to ask that Swetland be declared a trustee for him as respects the bonds, or that a lien to the value of the said bonds be established in his favor on the leasehold property, or that the transfer of

the leasehold property to Swetland by the trustee, Sheppard, be vacated and set aside.

As the agreement which complainant made with Ellis stands unimpeached upon the facts alleged, the complainant is not entitled to the relief he asks as respects his claim for $9,250 and the claim for $20,000.

The complaint was properly dismissed as to the Commercial Trust Company. The bill asks no relief as against it and charges it with no wrong.

The complaint was properly dismissed as to defendant Sheppard, who was and is an officer of the court, and in what he has done has carried out the orders of the court.

The complaint, for reasons already stated, was properly dismissed as to defendant Swetland.

All three of the above-named defendants are entitled to their costs in this court.

The action of the court below in remanding the cause as to defendant Ellis to the law side was a proper disposition to make of the allegations affecting him.

Decree affirmed.