# HARLEY & LUND CORPORATION v. MURRAY RUBBER CO.*

Circuit Court of Appeals, Second Circuit.
April 1, 1929.

No. 244.

*Certiorari denied, 49 S. Ct. 513, 73 L. Ed. —.

Prentice & Townsend, of New York City (Robert Kelly Prentice, of New York City, of counsel), for appellant.

Otterbourg, Steindler & Houston, Edwin M. Otterbourg, Edward F. Unger, and Charles A. Houston, all of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). There can be spelled out of the complaint a statement that the defendants induced the disclosure of the plaintiff's secrets upon the false representation that they intended to make a contract. This would fall within the decision of the Third Circuit in Rogers v. Virginia Carolina Chemical Co. (C. C. A.) 149 F. 1, and that of the English Court of Appeal in Edgington v. Fitzmaurice, L. R. 29 Ch. Div. 459. The theory is that a man's state of mind is as much an existing fact as anything else, and so susceptible of true or false description. We had the point before us in Church v. Swetland, 243 F. 289, and declined to commit ourselves as the decision did not require it. Since the case at bar must in any event be retried, we again leave it open for the present, assuming for the sake of argument that the complaint states a cause of action in deceit. Hennequin v. Naylor, 24 N. Y. 139; Stewart v. Emerson, 52 N. H. 301. Whether the proof was enough to satisfy the plaintiff's burden in cases of the kind we also pass, Lalone v. U. S., 164 U. S. 255, 257, 17 S. Ct. 74, 41 L. Ed. 425; Missouri, etc., Co. v. Guess, 17 F.(2d) 450 (C. C. A. 4).

Our difficulty with the verdict arises from the fact that, though both these be assumed, the learned judge adopted the wrong rule of damages. It is the plaintiff's loss, not the defendants' gain, which was material. Conceivably a bill in equity would lie to impress a trust upon the defendants' use of the information so obtained, but the complaint was not such. The proper measure was the difference between the plaintiff's position after the defendants learned its secrets and before. Possibly this prevented it from negotiating with any other manufacturer of rubber flooring; possibly there were such who would otherwise have contracted with it. In that case its prospective profits with such others might be the measure of its loss, though even then the profits it would have made with the defendants would not. Whether it could have proved these facts we cannot say. The defendants at least did not find it an insuperable difficulty that the plaintiff had already shared its secrets with an earlier manufacturer in a business which Lund swore had amounted to $75,000. Another possible manufacturer might equally have disregarded their possession of the same facts. Moreover, on any view the plaintiff will have to make its case upon the assumption that it has lost Harley, because, as we shall show, he was free to go, and the defendants had done no wrong in persuading him to leave.

While we cannot, therefore, say à priori that the plaintiff cannot prove that the defendants' possession of its processes and list of customers did not prevent it from getting contracts which it would otherwise have got, or compel it to do with less profitable ones, the record contained no evidence which justified a verdict for damages, and the charge did not present the proper issues, if it had. We doubt whether anything would serve short of direct proof that the defendants' knowledge acquired during the negotiations proved an obstacle to later attempts at specific negotiation; mere speculation as to what the plaintiff could have done will scarcely be enough. However, we shall not now try to lay down any absolute rules as to what the proof must be. It is enough that nothing of the sort was attempted, and that proof of the defendants' sales was irrelevant. They might show what the plaintiff would have made, had the negotiations gone through; but the action is not, and cannot be, for the loss of prospective profits. The defendants were free to call off the negotiations at their pleasure, at any time before the parties had come to an agreement on all the terms. It is not an actionable wrong to dally in the vestibules of obligation.

The complaint also set up, or tried to set up, quite another cause of action, which had

the defendants insisted, should have been separately stated. The ninth article says that they intended to entice Harley "away from his employment"; the twenty-first that they induced him "to resign as an officer and director." Neither alleges that Harley was under contract to serve the plaintiff, and that in leaving its employ he violated any obligation. Nor did the proof show anything of the sort. The plaintiff's incorporators passed a resolution on October 28th, while the negotiations were at their beginning, electing Harley a director, and the directors on the same day made him treasurer at a weekly salary of $100. Nothing besides appears. He was free to resign either or both positions at will. Briggs v. Spaulding, 141 U. S. 132, 154, 11 S. Ct. 924, 35 L. Ed. 662; Fearing v. Glenn, 73 F. 116 (C. C. A. 2); Inventions Corp. v. Hobbs, 244 F. 430, 443 (C. C. A. 2). It is true that there are occasions, not very well defined, when a director is not free to leave (Zeltner v. Zeltner Brewing Co., 174 N. Y. 247, 252, 253, 66 N. E. 810, 95 Am. St. Rep. 574), but these cannot include mere opportunities to better himself elsewhere.

Harley's abandonment of the plaintiff was not, therefore, an actionable wrong. We have recently examined how far the law makes it such to induce a third person to break a contract with the plaintiff (Blumenthal & Co. v. U. S., 30 F.(2d) 247), and we need say nothing here, except to observe that the tort presupposes some valid obligation. As in Triangle Film Corp. v. Artcraft Pictures Corp., 250 F. 381 (C. C. A. 2), the plaintiff attempts recourse to quite another doctrine, to those cases which have held it a tort to entice away from an employer servants themselves free to leave. It must be agreed that the limits of that doctrine are not well defined. Some of the cases depend upon the defendant's using means of persuasion independently unlawful (Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; American Foundries v. Tri-City Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360); others upon his purpose not to better his own fortunes, but in the pursuit of interests which the law will not recognize, to molest the plaintiff (Hitchman Coal Co. v. Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Duplex Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196). The two are apt to be confused, since persuasion, when actuated by the forbidden purpose, is often treated as itself an unlawful means. As we said in Blumenthal

v. U. S., it is probably the better way to regard the defendant in such cases as not coming within his privilege at all, rather than to speak of "malice" as though it were an affirmative replication. The turning point has ordinarily been where the court thought that the defendant's admissible interest ended. American Foundries v. Tri-City Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360; United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 408, 409, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762. Thus it is the definition of his privilege that really matters.

So far as we have found, it has never been thought actionable to take away another's employee, when the defendant wants to use him in his own business, however much the plaintiff may suffer. It is difficult to see how servants could get the full value of their services on any other terms; time creates no prescriptive right in other men's labor. If an employer expects so much, he must secure it by contract. The law of New York is, if anything, more favorable to the defendants than that of the Supreme Court (National Protective Ass'n v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Bossert v. Dhuy, 221 N. Y. 342, 117 N. E. 582, Ann. Cas. 1918D, 661; Beardsley v. Kilmer, 236 N. Y. 80, 140 N. E. 203, 27 A. L. R. 1411), though in that state also the defendant's purpose may toll his privilege (Auburn Draying Co. v. Wardell, 227 N. Y. 1, 124 N. E. 97, 6 A. L. R. 901).

Although, therefore, the plaintiff neither alleged nor proved any cause of action for enticing away Harley, we will not say that, had Harley been under contract, his sales might not have been competent evidence of the plaintiff's loss. Perhaps a jury might properly have considered them as a measure of what the plaintiff would have earned through him, had the defendants not diverted him to itself. We say this against the possibility that upon a new trial the second cause of action may be alleged and proved.

The judgment must be reversed, and a new trial ordered. Moreover, we suggest, though it is not our province to decide, that in the interest of clarity the District Court might well find it desirable to strike out the allegations as to Harley's enticement, or to compel the plaintiff to separate and plead as a separate cause of action that he had a contract with the plaintiff, which he broke by leaving, and which the defendants deliberately induced him to break. Much has, indeed, been written about the admissible latitude in pleadings sounding in "conspiracy." There

is, however, no more reason why a pleader in such actions should not definitely commit himself to the facts on which he means to stand than elsewhere; indeed there is vastly less. The notion that it is enough vaguely to charge defendants with "conspiracy," garnished with such adverbs as "maliciously" and "wrongfully," has done more to bewitch the whole subject than anything else. Whether, if the plaintiff at bar is properly confined, any substance will not evaporate with the rhetoric, we do not find it necessary now to decide.

Judgment reversed; new trial ordered.