OSGOODBY v. TALMADGE et al.

No. 99.

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1930.

McNamara & Seymour, of New York City (Stuart McNamara and Leonard B. Smith, both of New York City, of counsel), for appellants.

Stagg & Heath, of Ithaca, N. Y. (Riley R. Heath, of Ithaca, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

In October, 1924, the corporate defendant, Sale-Davis Company, acting by its president, defendant Talmadge entered into a written contract with plaintiff, by which he agreed to buy and the corporation agreed to sell certain land owned by it in the state of Florida. The purchase price was $15,000, payable in installments. It was contemplated that plaintiff would develop and improve the property and resell portions thereof from time to time,

and the contract provided that the corporation should, when requested, deliver deeds to plaintiff's vendees upon receiving specified prices per lot for the land so deeded, and should credit the sums so received upon the balance of the purchase price owing by plaintiff. A considerable portion of the property was so conveyed by defendant, and there is evidence from which the jury might, and doubtless did, find that by the end of March, 1926, Sale-Davis Company had received its full contract price and plaintiff had become entitled to a deed to the balance of the tract, which deed the corporation has never given.

■ Thus there was ample proof that the corporation had broken its contract. But the suit was not for breach of contract; nor would an action in contract sustain a joint judgment against both defendants, since Talmadge was not individually a party to the contract. The complaint charged a fraud, and it was upon the theory of fraud that the case was submitted to the jury. It is the appellant's contention that the judgment cannot be sustained upon any such theory. The correctness of this claim is the only question which need be considered.

The complaint charges that Talmadge individually, and the corporation acting through Talmadge as its president, conceived the fraudulent scheme of inducing plaintiff to enter into the contract and to spend money and effort in improving and making saleable the property, with the purpose of preventing the plaintiff from making the project a financial success so that he would default and the corporation would be able, under the forfeiture provisions of the contract, to retain his partial payments and all or part of the improved property. It is averred that pursuant to this fraudulent scheme the defendants never intended to carry out the contract, that they continuously delayed delivery of deeds to lots resold by plaintiff, slandered the title, bought in tax deeds, contracted to sell to others a part of the property embraced within plaintiff's contract, placed on record a new map of the property, and, after plaintiff had paid in full and demanded the deed to which he was entitled, refused and neglected to deliver such deed. It is further alleged that plaintiff's efforts gave the property a market value of $125,000, which was destroyed by defendants' acts, causing plaintiff damage of $150,000. The above is a condensed summary of the very prolix and detailed complaint.

■ We may assume, without the necessity of so deciding, that the complaint sufficiently sets forth a cause of action for deceit inducing the making of the contract. There are two such charges. There is first the charge that defendants from the beginning had the purpose of not carrying out their promises. In many jurisdictions this is held to be a deceit, because there is implicit in a promise a representation that the promisor has a present intention of performing it. This court has heretofore left the point open [Church v. Swetland, 243 F. 289; Harley & Lund Corp. v. Murray Rubber Co., 31 F.(2d) 932], and we may still do so. The judgment could not be sustained upon this charge, assuming it to state a cause of action, for no such issue was left to the jury, nor was the case tried upon this theory. The same may be said as to the second charge of fraudulent inducement, namely, the statement as to the number of lots previously sold by the corporation; such lots being excepted from the premises to be conveyed to plaintiff and being in fact more numerous than stated. Whether this was a fraud, we need not say. The action was tried, not on the theory of fraud in inducing the contract, but of fraud in carrying it out.

■ The theory of the cause of action asserted by plaintiff, and apparently adopted by the trial court in the charge, seems to be that a promisor may be liable in tort if he "maliciously" throws obstacles in the way of the promisee to prevent his performance and "maliciously" himself fails to perform. We know of no such doctrine. Of course, there are numerous classes of contracts, where the promisor's conduct may constitute both a breach of his promise and a tortious violation of some other legal duty closely related to the contractual duty; in such case the promisee may have his election between a remedy ex contractu and ex delicto. Negligent transportation of goods under a contract of carriage is, perhaps, the most obvious example. But no reason and no authority has been advanced for the view that conduct which is merely a breach of contract becomes a tort if the promisor's motives are sufficiently evil. See Higgins v. Applebaum, 186 App. Div. 682, 687, 174 N. Y. S. 807.

So extreme a doctrine is not claimed by the plaintiff. He relies upon Rich v. N. Y. C. & H. R. R. Co., 87 N. Y. 382. There the railroad desired to close a street, the closing of which would greatly damage property owned by Rich and would give him a large claim for damages. The city council would not consent to the closing in view of Rich's claim. So the railroad devised a scheme of

eliminating Rich. It instigated the owner of a mortgage upon Rich's property to sell at foreclosure, and, for the purpose of depressing the value of Rich's property, it violated a contract it had previously made with Rich to open its railway depot on a site adjacent to his property. As a result, Rich lost his property by foreclosure, the mortgagee buying it in at a small price and agreeing with the railroad to the closing of the street. These facts were charged in the complaint, the sufficiency of which as alleging an action in tort was not challenged, but the trial court did not allow Rich to prove them. The Court of Appeals reversed a judgment of dismissal, holding that the evidence was competent to prove essential links in the chain of fraud alleged. When the case was retried, the complaint was again dismissed, because there was no proof that the defendant incited the foreclosure by which Rich lost his property. Rich v. N. Y. C. & H. R. R. Co., 89 Hun, 604, 34 N. Y. S. 1146. This was affirmed, without opinion, in 154 N. Y. 733, 49 N. E. 1103. Thus it appears that the essential fact in the tort charged, without proof of which plaintiff could not win, was the malicious instigation of foreclosure causing him to lose his property. Perhaps a mortgagor should be entitled to such favor as a mortgagee may be willing to grant uninfluenced by the instigations of a third party who acts from selfish and unworthy motives. The analogy to malicious interference with a plaintiff's prospective customers is not very remote. Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L. R. A. (N. S.) 599, 131 Am. St. Rep. 446, 16 Ann. Cas. 807; Hutton v. Watters, 132 Tenn. 527, 179 S. W. 134, L. R. A. 1916B, 1238, Ann. Cas. 1916C, 433; Boggs v. Duncan-Schell Furniture Co., 163 Iowa, 106, 143 N. W. 482, L. R. A. 1915B, 1196; Dunshee v. Standard Oil Co., 152 Iowa, 618, 132 N. W. 371, 36 L. R. A. (N. S.) 263. Compare American Bank & Trust Co. v. Federal Reserve Bank, 256 U. S. 350, 41 S. Ct. 499, 65 L. Ed. 983. The Rich Case can stand for no more than its actual holding, and we need not now consider whether this court would approve the holding, or be bound in any event to follow it.

■ However that may be, the judgment in the case at bar cannot be sustained on the authority of the Rich Case. Here, if we understand the proof, there was none that defendants influenced any third party to act to plaintiff's damage, and, even if in examining this voluminous record we have overlooked some such evidence, it is clear that damages were not assessed on this theory. The court charged that the measure of damages was the value of the lots for which a deed should have been given at the time when plaintiff became entitled to the deed, and the jury took the value at the figure stated in one of plaintiff's letters to defendant, namely $30,000. The charge as to damages would have been correct if the action were for breach of contract in failing to give the deed to the remaining lots; but it was quite incorrect in an action based on malicious interference with plaintiff's prospective purchasers, for there was no evidence that such interference prevented the sale of the remaining lots. Therefore the judgment cannot be supported even if it be assumed that the proof was adequate to show that defendants did, as charged, maliciously annoy plaintiff's vendees by slandering title, allowing lots to be sold for taxes, and buying in the tax title, and delaying delivery of deeds.

■ The other acts complained of, namely, selling the railroad right of way, recording the plat which dedicated streets, and refusing to convey the remainder of the property covered by the contract after payment in full, were, if invasions of plaintiff's rights at all, merely breaches of contract, for which no recovery could be had in an action in tort.

Accordingly, the judgment is reversed, and the cause remanded.