610

See, also, 45 F.(2d) 696.

McNamara & Seymour, of New York City (Stuart McNamara and Charles Green Smith, both of New York City, of counsel), for appellants.

Richard T. McMahon, of Cortland, N. Y. (Clifford H. Searl, of Syracuse, N. Y., of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellee obtained a judgment below based upon the theory of a deceit practiced upon him when, in October, 1924, he entered into a contract with the corporate appellant for the purchase of land for development purposes in Florida. The contract called for the delivery of a deed of this property on payment of $15,000 to be made in installments, as deeds to lots were delivered. The appellee intended to develop the property for residential purposes, and required the delivery of deeds by the corporate appellant as he sold the property to his customers and as he paid certain sums for the lots requested to be deeded. When the full purchase price was paid, he was entitled to a deed for the balance. The full purchase price was claimed to have been paid in March, 1926, at which time a deed for the balance was prepared, but, appellee claims, was never delivered. A dispute is presented as to what property he was entitled to under the terms of the contract of purchase. The appellee received all the property contracted for in the north and west sections and part of the property on the peninsula. The corporate appellant executed a deed for the remainder of the property on the peninsula which it was ready to deliver on an adjustment of the small balance due, but the appellee refused to accept because it excluded a right of way previously sold to a third party.

The individual appellant was not a party to the contract, but was the president of the corporate appellant and acted for it in making and carrying out the terms of the contract of sale. The deceit supporting the recovery was said to be a fraudulent misrepresentation of fact, namely, an intention that the contract should be entered into but never carried out by the corporate appellant, and that the individual appellant participated in this deceit. The misrepresentation relied upon is not an expressed statement about an extrinsic fact or even about the intent or state of mind of the appellants. Reliance is placed, not upon an express representation, but only upon the implied representation by a party to a contract and its agent that it intends to perform. Of course, such a repre-

sentation is implied in every contract. If false, that is, if a party does not intend to perform and uses the implied representation to deceive the other party and to induce him to enter into the contract, the latter might have an action in tort based upon deceit. But, as we said on the former appeal (45 F.(2d) 696, 697): "This court has heretofore left the point open (Church v. Swetland [C. C. A.] 243 F. 289; Harley & Lund Corp. v. Murray Rubber Co. [C. C. A.] 31 F.(2d) 932), and we may still do so." There is authority for holding a promisor for a fraudulent representation if he promises to perform a contract and never intended to do so, provided the promisee acted upon the misrepresentation and suffered damages. Rogers v. Virginia-Carolina Co., 149 F. 1 (C. C. A. 3); Wright v. Barnard (D. C.) 248 F. 756.

The appellee has obtained a judgment against the individual appellant who only represented the corporation in making the contract. We need not decide whether a corporation's agent may render himself personally liable in a deceit action if he conspires in a deceitful practice or misrepresentation. We need not decide whether the implied representation of intent to perform, which is primarily attributable to the principal, is also attributable to the agent personally, so that, if false, it renders him liable personally for fraud. To be sure, an agent should be liable personally for express misrepresentations, for there he does some act which imposes a liability. To attach the implied representation of intent suggests that the agent assumes the promise of the contract which he does not assume in bringing about the making of the contract, nor may he be bound by the representation of intent of the company in every promise. Of course, in a sense, the agent of the corporation authorized to contract for it is the depositary of its intent, knows its intent and, perhaps, has the same intent personally. Where the agent is the president and, as here, the one in control of the corporation, its intent not to perform may well be his intent not to perform, but, even so, legal recognition of the corporate fiction may require that the intent be attributed to him in his representative capacity only. However, we need not pursue this legal question to any conclusion, for upon this record there is no liability as to either of the appellants.

■■ The theory of this action requires evidence that there was no intent to perform when the contract was made to sustain this verdict. Intent formed during the performance of a contract to breach and not complete performance is not enough. Even a deliberate breach is not of itself tortious.

[3] The contract was made October 31, 1924, and provided for the conveyance of part of "a tract of land equivalent to about one section and known as the Town of Southport, Florida, and including about seventy (70) buildings, eight hundred (800) vacant lots, and other land as shown by the map of Southport hereto attached." The charges of misrepresentation are: (1) That appellants fraudulently represented that not over 30 lots had been sold from the premises conveyed, whereas they knew 81 lots had been sold; (2) that there was concealed a contract giving a third party the right to tap trees on the land for turpentine; (3) that there was delay in the execution and delivery of the deeds to the lots resold by the appellee for which he paid appellants; (4) that the individual appellant delayed in executing the deeds from the corporation to buyers from the appellee, and that he later claimed such deeds to be illegal; (5) that appellants prevented individual assessment of lots sold and subjected purchasers to annoyance because of blanket assessments, and that appellants, through tax sales, attempted to foreclose appellee from any interest or equity in the property; (6) that the appellants, for a consideration, attempted to sell in their own right a portion of the premises included in the contract and sold to the appellee; (7) that, when full payment was made on the contract, March 29, 1926, and conveyance of title demanded, the appellant failed and neglected to deliver such deed; (8) that the appellants made a new survey and advised interested parties that the map annexed to the contract was insufficient and did so in order to prevent appellee's success and excluded appellee from property which appellants sold to other parties.

As to (1), the contract excepted lots theretofore sold, "probably not exceeding thirty." The only evidence of the larger number sold was the appellee's statement, "I think there was over eighty," but he in no way justifies that statement. As the evidence shows, he obtained, instead of 800 lots, 900 lots in blocks 1–92 north and west of the water. He contracted to sell much of the property to the Avenue Holding Company in various groups of lots, and he was unable to establish the actual number of lots he sold or which of them were or were not conveyed to him. There is no evidence of fraud or misrepresentation in this which warrants an inference that the appellants did not intend to carry out the contract.

As to (2), on June 7, 1924, the appellant corporation did make a contract giving five years' turpentine rights to pine trees to another party. But the contract provided that, if the appellant desired to sell any of the land free from this lease, it might do so upon refunding the pro rata value of the turpentine rights of the land conveyed. Had the appellee insisted upon the removal of this lien, if such it was, it could have been removed. The appellants were never requested to obtain this release, and it could have been procured for $48. It constitutes no evidence of fraudulent inducement.

As to (3), involving the alleged delays in delivery of deeds to lots sold by the appellee, if anything the delays might amount to a breach of the contract, but there is no evidence of bad faith or indicating an intention formed at the time of making the contract not to carry it out.

As to (4), in carrying out the contract, the question arose as to a need for a new survey and deeds, and the appellant, on April 23, 1927, wrote to the appellee referring to certain deeds as illegal and that "trouble is sure to ensue sooner or later if they are not corrected." However unhappy the use of word "illegal," was, if it was a slander of title, it permits no inference of an intention not to carry out the contract when it was made.

As to (6), it appears that the corporate appellant sold a 100-foot right of way along the railroad line. The map attached to the contract shows a railroad extending from the north through a 100-foot strip along the eastern border of the tract into the peninsula and extending thus upon a dock on the west shore of the peninsula. The appellee's contract of purchase provided that the corporate appellant sell "the entire property above mentioned, excepting certain lots heretofore sold, * * * and also excepting the Southern portion of the Town containing the railroad tracks, the railroad yard the shipping facilities, being the portion south of the Southern row of houses shown on the map." By a supplemental contract of November 15, 1924, the corporation leased to the appellee the land south of the railroad tracks for five years "subject to cancellation any time, upon written notice * * *" provided the appellant or its agents or assignees "should require this property for railroad or other transportation purposes or for business connected therewith." This was an express reservation that the corporate appellant was saving the railroad. But assuming, without deciding, that there is any merit in the claim

that this was a breach of the contract, it is no evidence of an intention formed when the contract was made not to carry out the contract. The question arose subsequent to making the contract, and the rights of the appellee, if any, must be tested by his rights under the terms of the contract.

As to (7), the evidence presents a controverted question of whether there was in fact a failure to deliver the deed on March 29, 1926, when, as the appellee claims, he was entitled to delivery because he had paid the purchase price in full. The corporate appellant claims that the deed was prepared and ready for delivery, but it was not acceptable to the appellee because it did not include the right of way above referred to. Moreover, the appellant claims that all the purchase price was not paid. In any case, if there was an invasion of the appellee's rights, it is merely a breach of contract, and no action may be maintained based upon an alleged tort.

As to (8), the letters written to purchasers were sent in good faith for the purpose of offering corrected deeds to conform to a new survey and map. There is not the slightest evidence of fraud or bad faith which had its inception at the time of the making of the contract indicating an intent not to carry it out.

The appellee testified to a conversation with the individual appellant in May, 1927, wherein appellee said:

"I told him I was there for the last time for my deed and if I did not get it I was going to sue him, that I was going into court, and he got very much excited and told me, with that glance of his, he says, 'You didn't think I was going to let you make all that money, all this money out of my property.'

"Q. And what else did he say? A. He says: 'You didn't think I was going to give you a deed for that property'; he says, 'I never intended to,' or words to that effect."

It is evident from the subject-matter then being investigated by counsel that this dispute involved the railroad right of way which the appellants insisted they had not sold and would not be deeded to the appellee. It is no evidence of an intent not to carry out the contract when made.

In this state of the proof, it was the duty of the court below, when the motion to dismiss was made, to have granted it for want of any proof justifying the claim of deceit and fraud in making the contract.

Judgment reversed.