## SEABOARD TERMINAL & REFRIGERA-TION CO. v. DROSTE.
### No. 132.

Circuit Court of Appeals, Second Circuit.
Dec. 9, 1935.

Jacobson, O'Neill & Baum, of New York City (Isaac N. Jacobson, of New York City, of counsel), for appellant.

Harry F. Mela and Lionel S. Popkin, both of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, a New Jersey company, operated a warehouse in Jersey City, in which the Dairy Trading Corporation, of which the defendant was president, had stored certain cases of eggs and butter during August, 1933, on which the plaintiff had a lien for the repayment of advances. The theory of the first count is that the defendant secured the delivery of the eggs to the Dairy Trading Corporation by falsely representing that that company was in position to substitute trust receipts for them, when in fact it had already assigned to a bank those accounts arising from their sale which the receipts were to cover. The second count, also in deceit, is that the defendant induced the plaintiff to withhold the deposit of checks given it by the Dairy Trading Corporation to pay its advances on the butter, on the false representation that the proceeds from the sale of the butter had not yet been deposited in the company's bank account. The parties stipulated that the case should be tried to a judge, who, at the conclusion of the

evidence, directed judgment for the plaintiff on both counts. This being equivalent to a general finding, the only question before us is the sufficiency of the evidence; all disputed points being necessarily taken in favor of the plaintiff.

The plaintiff's evidence justified the following conclusions as to the first count: The Dairy Trading Corporation had some 1,550 cases of eggs on storage with the plaintiff, on the security of which it had made advances. The defendant told the plaintiff's manager that his company had a contract for the sale of the eggs to a state hospital, and asked for space in the warehouse in which to "candle" and grade them. He added that the company could not pay the advances due, but must get possession of the eggs on credit; and to this the plaintiff agreed on condition that trust receipts be substituted for its lien. Because of inevitable rejections during grading, it was known that the eggs in the warehouse would not be enough to fill the order of the hospital, so that the Dairy Trading Corporation was obliged to buy elsewhere; and it turned out that of 1,534 cases delivered in performance of the contract, only 724 had been in storage, and that 810 were bought for the occasion. In order to raise the money to buy these last, the Dairy Trading Corporation was forced to assign in advance to its bank all accounts which should become due under the contract with the hospital. This it did after the agreement between the defendant and the plaintiff, but before any of the eggs had been delivered. The hospital rejected 623 cases of the 1,534, and it does not appear how these were distributed between the storage eggs and those bought outside. The Dairy Trading Corporation became insolvent and its bank collected the accounts due from the hospital.

██ When the defendant promised for the Dairy Trading Corporation that it would give trust receipts, he represented that the promisor intended to perform. Since the trust receipts declared that the accounts should be collected for, and paid to, the plaintiff, the promise was a representation, implicit it is true, but none the less real, that the promisor meant to keep them free from the claims of others, for. otherwise it could not have performed. Had the receipts been executed and delivered concurrently with the eggs, they would also have been representation that the accounts were in fact then free; and the same is true though the receipts were delivered later, as was the case, because the delivery was in performance of the original agreement, and presupposed that both sides could still perform. For some time we declined to commit ourselves as to whether a promise made by a promisor who intends not to perform is an actionable deceit. Church v. Swetland (C.C.A.) 243 F. 289, 295; Harley & Lund Corporation v. Murray Rubber Co. (C.C.A.) 31 F.(2d) 932; Osgoodby v. Talmadge (C.C.A.) 45 F.(2d) 696. But in Continuous Zinc Furnace Co. v. American Smelting & Refining Co., 61 F.(2d) 958, following principle and the better authority, we held that it was, and that decision we now reaffirm, though we appear to have overlooked it when Osgoodby v. Talmadge, 67 F.(2d) 610, came before us a second time.

██ .The measure of damages in an action for deceit follows from the nature of the tort. It is ordinarily not a wrong to influence the conduct of others by declarations not promissory; men accept the risks of the truth of those utterances which they take as cues for their action or inaction. Even in deceit, the utterance alone is not the wrong; it is the addressee's conduct induced by it and known as likely to be evoked, and the damage consequent upon that conduct. And so the damages should never be measured by holding the utterer to the truth of his utterance; he is not a warrantor; they should be measured by the loss resulting from the addressee's change of position. The difference may be very real. Here, for example, if damages were to be measured by the first standard, it would be necessary to learn how many of the stored eggs the hospital rejected, because no accounts would have arisen from these, even though the implied utterance had been true; that is, though the bank had had no assignment. The proper measure is not that, but the loss caused to the plaintiff by delivering the eggs, the conduct which the defendant brought to pass. If the plaintiff had kept the eggs, its advances would have remained secured, and they would have been repaid pro tanto upon the insolvency of the company. Hence it is irrelevant whether all or none of the hospital's rejections were of storage eggs; the damages in either case were the value of the plaintiff's security. The

judgment on the first count must be affirmed.

As to the second count the evidence justified a finding of the following facts: The Dairy Trading Corporation had some butter on storage with the plaintiff on which as on the eggs the plaintiff had made advances. Finding a buyer for this on January 10, 1934, it gave to the plaintiff its check for $3,170, the amount of its debt, which it asked the plaintiff to withhold for two or three days until it had collected the proceeds from the buyer and deposited them in its bank. Lyons, who conducted this transaction for the company, told Jones, who represented the plaintiff, that he would let him know when the proceeds had been deposited and twice thereafter, when Jones telephoned, told him that they had not been, though only one of these talks, that of Saturday, the 13th, was fixed as having taken place when this declaration was untrue. On Monday, the 15th, Lyons came to Jones' office, told him that the large check could not be honored, and asked him to take in its place three smaller ones, one for $1,170, to be presented on the 17th, and two for $1,000 each, to be presented on the 18th and 19th, respectively. Again he assured Jones that the proceeds had not yet been deposited. At no time after the 12th was the bank account of the Dairy Trading Company large enough to pay the large check, which must therefore have been dishonored if presented. On the 17th the company became insolvent and the bank seized its deposit balance of $1,706.88.

The judgment on this count must be reversed because even assuming that the defendant authorized Lyons to tell Jones on the 13th and on the 15th that the proceeds from the sale of the butter had not been deposited, the plaintiff has proved no damage from the deceit. We are not to suppose that Lyons intended to deceive Jones on the 10th when he told him to withhold the check until the proceeds from the sale of the butter were deposited; indeed, the complaint lays only the deceit as of January 15th. Though we assume that this was what made the plaintiff withhold the large check on that day and take the three substitutes, yet if the plaintiff had then presented it, it would have been dishonored. It is true that on the 15th and 16th the balance was enough to pay the first and second checks and still enough on the 17th to pay the

first check. However, it was not Lyons' deceit on the 15th which induced Jones to withhold these checks, but his own agreement not to present even the first of them until the 17th. That agreement was indeed induced by Lyons' fraud, but the only remedy for that was to rescind, that is, to return the three checks and get back that for $3,170, and that would not have bettered the plaintiff's position. What it needed was possession of the new checks unencumbered by any condition as to their presentation and that it could not have. Therefore, even assuming that the defendant was responsible for Lyons' fraud, there were no damages and can be no recovery.

Judgment affirmed on the first count.

Judgment reversed on the second count, and new trial ordered.